**WAL–MART STORES, INC., Petitioner,**

**v.**

**Monroe JOHNSON and Brandy Johnson, Respondents.**

No. 01–0441.

Supreme Court of Texas.

Argued March 20, 2002.

Decided May 22, 2003.

Kevin D. Jewell, Alan N. Magenheim, Magenheim, Bateman & Helfand, P.L.L.C., Houston, and Douglas W. Alexander, Scott Douglass & McConnico, L.L.P., Austin, for Petitioner.

Mark C. Sparks, Joseph J. Fisher, II, Provost & Umphrey Law Firm, L.L.P., Beaumont, for Respondent.

Chief Justice PHILLIPS delivered the Opinion of the Court.

In this negligence case, we must decide whether the trial court abused its discretion when it instructed the jury that it could presume that certain missing evidence, had it been preserved, would have been adverse to defendant, Wal–Mart Stores, Inc. Holding that the trial court had not abused its discretion in submitting this spoliation instruction, the court of appeals affirmed the judgment in favor of the plaintiffs, Monroe and Brandy Johnson. 39 S.W.3d 729. Wal–Mart petitioned for review, arguing that submitting this instruction was an abuse of discretion because the evidence in question was not spoliated, but rather was innocently disposed of in the normal course of business before Wal–Mart had notice of the Johnsons' claim. Because we agree that Wal–Mart had no duty to preserve the evidence and that the instruction was harmful error on the record of this case, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

## I

While stocking merchandise, a Wal-Mart employee accidently knocked one or more decorative reindeer from a high shelf onto Monroe Johnson's head and arm. Johnson's fiancee, now his wife, was with him and heard but did not see the accident. When she went to investigate, she found her fiancee dazed, but still standing, with a cut on one arm and several reindeer lying at his feet. At the scene, Johnson told Phyllis McClane, a Wal-Mart supervisor who had come to investigate, that he was not hurt. After a Wal-Mart employee cleaned and bandaged his cut, Johnson and his fiancee left the store.

During her investigation, McClane took notes, photographed the reindeer, and obtained a written statement from the employee who caused the accident. She recorded the results of her investigation on a Wal-Mart form entitled "Report of Customer Incident." She attached the photo and the employee's statement, sending copies to the District Manager and claim management personnel. According to the incident report, Johnson neither threatened to sue nor indicated that Wal-Mart should pay any medical costs or other damages. After completing the report, McClane discarded her notes.

That evening, Johnson's neck and arm began to hurt, and he could not sleep. The next day, his doctor prescribed muscle relaxers, pain killers, and physical therapy. Still in pain six months later, Johnson and his wife sued Wal-Mart. While suit was pending, Johnson consulted three additional physicians and tried additional treatments without success. About seventeen months after the accident, a surgeon performed an anterior cervical discectomy and fusion on Johnson's neck.

During discovery, the Johnsons asked whether Wal-Mart still possessed the reindeer that fell on him. Wal-Mart did not, but offered to provide a "reasonable facsimile." The Johnsons did not want the facsimile, and the trial court granted their motion in limine prohibiting Wal-Mart "from introducing into evidence a reasonable facsimile of the reindeer made the basis of this lawsuit."

At trial, the parties offered sharply divergent evidence about the composition and weight of the reindeer in question. Johnson testified that they were made of wood, each weighing as much as ten pounds. Ron Wheeler, the store manager, countered that the reindeer were made of papier mâchè and weighed only five to eight ounces each. Wal-Mart argued that such flimsy reindeer could not have proximately caused Johnson's neck problems, which it claimed resulted from an automobile accident years earlier. Wheeler also testified that Wal-Mart could not produce any of the reindeer because they had all been sold or, if broken, thrown away. Only the photograph of the reindeer was introduced in evidence, but its quality was too poor to substantiate or rebut either party's description.

Based on Wal-Mart's failure to keep the reindeer, the Johnsons requested and obtained the following spoliation instruction from the trial court:

> You are instructed that, when a party has possession of a piece of evidence at a time he knows or should have known it will be evidence in a controversy, and thereafter he disposes of it, makes it unavailable, or fails to produce it, there is a presumption in law that the piece of evidence, had it been produced, would have been unfavorable to the party who did not produce it. If you find by a preponderance of the evidence that Wal-Mart had possession of the reindeer at a time it knew or should have known they would be evidence in this controversy, then there is a presumption

that the reindeer, if produced, would be unfavorable to Wal–Mart.

In its verdict, the jury found Wal–Mart negligent and awarded $76,000 in damages. The trial court rendered judgment on this verdict, and the court of appeals, with one justice dissenting, affirmed. 39 S.W.3d 729. We granted Wal–Mart's petition for review to determine whether a spoliation instruction [1] was appropriate in this case.

## II

■ Evidence may be unavailable for discovery and trial for a variety of reasons. Evidence may be lost, altered or destroyed willfully and in bad faith or it may be lost for reasons completely innocent. Sometimes, lost evidence may be easily replicated, or it may be so marginal that it has little or no effect on the outcome of the case. On other occasions, the loss or destruction of evidence may seriously impair a party's ability to present its case. A trial judge should have discretion to fashion an appropriate remedy to restore the parties to a rough approximation of their positions if all evidence were available. *See generally TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). These remedies must generally be fashioned on a case-by-case basis. *See Trevino v. Ortega,* 969 S.W.2d 950, 953 (Tex.1998).

In this case, the trial court decided to remedy what it perceived to be Wal–Mart's misconduct by giving a spoliation instruction. The instruction informed the jury. that it must presume that the missing reindeer would have harmed Wal–Mart's case if the jury concluded that Wal–Mart disposed of the reindeer after it knew or should have known that they would be

evidence in the case. Such an instruction is a common remedy for spoliation, with roots going back to the English common law. *See Armory v. Delamirie,* 93 Eng. Rep. 664 (K.B.1722). Its purpose is captured in the Latin maxim *omnia presumuntur contra spoliatorem,* "all things presumed against a despoiler or wrongdoer." BLACK'S LAW DICTIONARY 980 (5th ed.1979). The presumption has been a part of Texas jurisprudence for over a century, and we have characterized it as an inference to be drawn by the jury. *Curtis & Co. Mfg. Co. v. Douglass,* 79 Tex. 167, 15 S.W. 154, 155 (1890). We have never had occasion, however, to define its use. *See State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 330 (Tex.2002) (unnecessary to decide whether spoliation instruction was erroneous); *Trevino,* 969 S.W.2d at 952 (mentioning but not applying this remedy); *Malone v. Foster,* 977 S.W.2d 562, 563 (Tex.1998) (mentioning adverse inference associated with spoliation); *Curtis,* 15 S.W. at 155 (same).

■ Our courts of appeals have generally limited the use of the spoliation instruction to two circumstances: [1] the deliberate destruction of relevant evidence and [2] the failure of a party to produce relevant evidence or to explain its nonproduction. *See Anderson v. Taylor Publ'g Co.,* 13 S.W.3d 56, 61 (Tex.App.-Dallas 2000, pet. denied) (citing *Wal–Mart Stores, Inc. v. Middleton,* 982 S.W.2d 468, 470–71 (Tex.App.-San Antonio 1998, pet. denied)). Under the first circumstance, a party who has deliberately destroyed evidence is presumed to have done so because the evidence was unfavorable to its case. *See Williford Energy Co. v. Submergible Cable Servs., Inc.,* 895 S.W.2d 379, 389–90

---

1. To resolve this appeal, we need not decide whether the instruction given by the trial was correct.

(Tex.App.-Amarillo 1994, no writ); *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex.App.-Fort Worth 1993, writ denied). Under the second, the presumption arises because the party controlling the missing evidence cannot explain its failure to produce it. *See Watson v. Brazos Elec. Power Co-op., Inc.,* 918 S.W.2d 639, 643 (Tex.App.-Waco 1996, writ denied).

■■■■ Although the parties argue their respective positions under this second circumstance at length, we need not decide whether a spoliation instruction is justified when evidence is unintentionally lost or destroyed, or if it is, what standard is proper. Rather we begin and end our analysis here with the issue of duty, the initial inquiry for any complaint of discovery abuse. Before any failure to produce material evidence may be viewed as discovery abuse, the opposing party must establish that the non-producing party had a duty to preserve the evidence in question. *See* Wendorf et al., TEXAS RULES OF EVIDENCE MANUAL III–12 (6th ed.2002); Kindel & Kai Richter, *Spoliation of Evidence: Will the New Millennium See a Further Expansion of Sanctions for the Improper Destruction of Evidence?,* 27 WM. MITCHELL L.REV. 687, 689 (2000). Such a duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim. *See* 1 WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 301.06[4] at 301–28.3 (2d ed. 2003) ("[T]here must be a sufficient foundational showing that the party who destroyed the evidence had notice both of the potential claim and of the evidence's potential relevance."); *cf. Nat'l Tank Co. v. Brotherton,* 851 S.W.2d 193, 204 (Tex.1993) (stating objective test for when litigation may reasonably be anticipated).

### III

■■■ Wal–Mart argues that it had no duty to preserve the reindeer as evidence because it had no notice that they would be relevant to a future claim. Specifically, Wal–Mart contends that it did not learn of the Johnsons' claim until all of the reindeer had been disposed of in the normal course of business. The Johnsons point out that Wal–Mart's extensive investigation on the day of the accident indicates its awareness of both the potential claim and the reindeer's importance to it. Wal–Mart responds that it routinely investigates all accidents on its premises, and this particular investigation revealed that Johnson had not been seriously injured and never indicated that he might seek legal relief. We agree that nothing about the investigation or the circumstances surrounding the accident would have put Wal–Mart on notice that there was a substantial chance that the Johnsons would pursue a claim. *Cf. National Tank Co.,* 851 S.W.2d at 204 (objective test for anticipation of litigation is whether "a reasonable person would conclude from the severity of the accident and the other circumstances surrounding it that there was a substantial chance" for litigation).

The Johnsons counter that, regardless of one's view of the evidence, a duty must be found because Wal–Mart positively asserted to the trial court that it anticipated suit from the day of the accident. Their Interrogatory 22 asked if Wal–Mart had in its "possession any handwritten notes made during the interviews of witnesses and/or employees." Wal–Mart responded:

Defendant objects to this interrogatory on the grounds that it seeks information prepared in anticipation of litigation. Defendant further objects to the extent discovery sought violates the attorney-client privilege and attorney work prod-

uct privileges. Subject to the foregoing objections, see Customer Incident Report.

Because McClane's handwritten notes were the only notes relevant to the question, the Johnsons argue that this objection was a tacit admission that Wal–Mart anticipated the Johnsons' claim from the beginning. The Johnsons buttress this conclusion with testimony from Wal–Mart's store manager, Ron Wheeler, who, when questioned at trial, agreed that Interrogatory 22 must refer to McClane's handwritten notes taken on the day of the accident because he was unaware of any other notes or interviews.

Wal–Mart responds that Interrogatory 22 specifically asked about notes in its possession. Because McClane had discarded her notes shortly after completing the Customer Incident Report, they were not in Wal–Mart's possession and thus not within the scope of the question. Wal–Mart submits that it clearly intended no claim of privilege for information collected on the day of the incident because it produced the Customer Incident Report prepared from McClane's handwritten notes. Finally, Wal–Mart submits that its objection was based on the interrogatory's request for *any* notes in Wal–Mart's possession, even those that it may have created after the lawsuit was filed.

Because there are several possible reasons for Wal–Mart's objection to Interrogatory 22, it cannot constitute an admission that Wal–Mart knew on the day of the accident that there was a substantial chance that Johnson's injury would result in litigation. To the contrary, the evidence is undisputed that neither Wal–Mart nor Johnson knew on the day of the accident that his injury might be serious or that Johnson might pursue legal action. Even after Johnson learned that he had injured his neck, nothing in the record suggests that he informed Wal–Mart of his claim prior to filing suit or that Wal–Mart learned of his claim in any other way.

Thus, as a foundation for the submission of the spoliation instruction in this case, the Johnsons had to show that Wal–Mart disposed of the reindeer after it knew, or should have known, that there was a substantial chance there would be litigation and that the reindeer would be material to it. *See* 1 WEINSTEN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 301.06[4], at 301–28.3 (2d ed.2003). The plaintiffs failed to do this. *See Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 55 (Tex.App.-Corpus Christi 2001, no pet.) (video tapes recorded over in the normal course of business and before notice of claim provided no basis for exclusion of evidence based on alleged spoliation); *Aguirre v. S. Tex. Blood & Tissue Ctr.,* 2 S.W.3d 454, 457 (Tex.App.-San Antonio 1999, pet. denied) (destruction of records in the regular course of business and without notice of their relevance to future litigation did not raise spoliation presumption). We therefore agree with Wal–Mart that the trial court abused its discretion when it submitted the spoliation instruction to the jury because the Johnsons failed to establish that Wal–Mart had a duty to preserve the reindeer.

## IV

■ Even though the trial court erred, the instruction was not reversible error unless its submission probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 61.1(a), 44.1(a); *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992). Wal–Mart argues that the instruction here was harmful because it unfairly stigmatized Wal–Mart as a party who had concealed evidence, thereby prejudicing the jury's view of its side of this closely contested case. Wal–Mart points to cases like *Acord v. General Motors Corp.,* 669

S.W.2d 111, 116 (Tex.1984), where we held that it was reversible error to submit an unnecessary instruction that, while not technically incorrect, served only to tilt or nudge the jury. *See also In re V.L.K.*, 24 S.W.3d 338, 343 (Tex.2000); *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 36 (Tex.1998); *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984).

The Johnsons respond that the instruction, even if erroneous, was harmless because it was not needed for the jury to reach its verdict. *See Whiteside v. Watson*, 12 S.W.3d 614, 621 (Tex.App.-Eastland 2000, pet. dism'd by agr.) (citing Tex. R.App. P. 44.1). The jury could have simply chosen to believe the plaintiffs' evidence about the reindeer and the injury rather than Wal-Mart's version. Further, the Johnsons suggest that the reindeer's weight and composition were not highly significant under the evidence, as the plaintiffs' own medical expert testified that Johnson's startled reaction to the falling objects was probably more significant to his neck injury than the weight of the objects themselves.

While we do not lightly reverse a judgment because of an erroneous instruction, we believe an unnecessary spoliation instruction is particularly likely to cause harm. Because the instruction itself is given to compensate for the absence of evidence that a party had a duty to preserve, its very purpose is to "nudge" or "tilt" the jury. Thus, if a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested. *See generally, Timberwalk Apartments Partners, Inc. v. Cain*, 972 S.W.2d 749, 755 (Tex.1998); *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 921 (Tex.1979); *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 821–822 (Tex.1980).

We hold that the trial court erred in submitting the spoliation instruction in this case and that the spoliation instruction was harmful and probably caused the rendition of an improper judgment. Tex.R.App. P. 61.1(a). Accordingly, we reverse the court of appeals' judgment and remand this case to the trial court for further proceedings.