Opinion issued May 20, 2005

     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01126-CV




IMELDA CARDOZA AND FERNANDO CARDOZA, Appellants

v.

RELIANT ENERGY HL&P, Appellee




On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2001-24857




MEMORANDUM OPINION

          Appellants, Imelda and Fernando Cardoza, appeal from a take-nothing
judgment rendered in favor of appellee, Reliant Energy HL&P (“Reliant”). We
determine whether the trial court erred in denying the Cardozas’ request for an
irrebuttable spoliation-presumption instruction, in granting Reliant’s summary
judgment motion, and in rendering a take-nothing judgment against the Cardozas. 
We affirm.
Facts

          On May 24, 2000, a fire severely damaged the Cardozas’ home and personal
property. The Cardozas’ homeowners insurer, Farmers Insurance Exchange
(“Farmers”), brought a subrogation action against Reliant for breach of contract,
breach of warranty, and negligence for allegedly improperly installing, maintaining,
servicing, designing, and inspecting the equipment bringing electricity into the home. 
Farmers sought damages for the amounts paid under the policy (including repair,
replacement, and cleaning costs for the home and its contents and the cost of the
Cardozas’ living expenses during the home’s repair), the costs of Farmers’s
investigation to determine the cause and origin of the fire, and attorney’s fees.
          A few months later, the Cardozas intervened, also asserting claims against
Reliant for breach of contract, breach of warranty, and negligence. They sought
recovery of “damages suffered as a result of [Reliant’s] conduct,” including repair
and replacement costs for their real and personal property, but also sought mental-anguish damages and lost wages, as well as attorney’s fees incurred by their own
counsel. In later briefing filed with the trial court, the Cardozas described the
damages that they sought as “damages not covered by their homeowners insurance.”
          The Cardozas then moved the trial court for a spoliation instruction because,
during the fire, Reliant had removed part of the power line running from its pole to
the home (“the drop line”) and destroyed the drop line soon thereafter. Specifically,
the Cardozas prayed that the court (1) give the jury a spoliation instruction “that it is
presumed that had the drop line been produced, it would have revealed cause and
origin findings [for the fire] unfavorable to Reliant” and also that the court (2)
prevent Reliant from rebutting this spoliation presumption. The trial court denied the
motion.



          A few months after the trial court’s spoliation ruling, Reliant moved for no-evidence summary judgment “on the claims of interveners Fernando and Imelda
Cardoza” on the grounds that no evidence of breach or proximate cause existed. See
Tex. R. Civ. P. 166a(i). In response, the Cardozas re-urged their spoliation motion
and attached evidence relevant to spoliation, implicitly acknowledging—as they do
on appeal—that a spoliation presumption was the only way for them to provide
evidence of breach and causation and thus to defeat the summary judgment motion. 
The trial court at first denied Reliant’s summary judgment motion, but, upon Reliant’s
motion for reconsideration, the court granted the motion to reconsider, granted
Reliant’s summary judgment motion, and rendered judgment that the Cardozas take
nothing “on all of their claims,” which the court then dismissed with prejudice.


Spoliation
          Under their sole issue, the Cardozas first argue that the trial court erred in
denying their request for a spoliation-presumption instruction. 
A.      Standard of Review 

           Trial courts have broad discretion in taking measures to address spoliation of
evidence. See Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 721 (Tex. 2003);
Trevino v. Ortega, 969 S.W.2d 950, 953 (Tex. 1998). A trial court abuses its
discretion by acting arbitrarily, unreasonably, or without consideration of guiding
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). A trial court generally does not abuse its discretion when it bases its decision
on conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978).
B.     The Law Concerning Spoliation 

          Spoliation is the improper destruction of evidence relevant to a case. Malone
v. Foster, 956 S.W.2d 573, 577 (Tex. App.—Dallas 1997), aff’d on other grounds,
977 S.W.2d 562 (Tex. 1998). When they determine that spoliation has occurred,
“[t]rial judges have broad discretion to take measures ranging from a jury instruction
on the spoliation presumption to, in the most egregious case, death penalty
sanctions.” Trevino, 969 S.W.2d at 953. “As with any discovery abuse or evidentiary
issue, there is no one remedy that is appropriate for every incidence of spoliation; the
trial court must respond appropriately based upon the particular facts of each
individual case.” Id.
          “When a party believes that another party has improperly destroyed evidence,
it may either move for sanctions or request a spoliation presumption instruction.” Id.
at 954 (Baker, J., concurring); Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654,
666 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (favorably citing and following
Justice Baker’s concurring opinion on this and related matters concerning spoliation). 
The trial court should then determine, as a preliminary legal issue, whether a
spoliation-presumption instruction or sanctions are appropriate. Trevino, 969 S.W.2d
at 954 (Baker, J., concurring); Schooley, 984 S.W.2d at 666. “This legal inquiry
involves considering: (1) whether there was a duty to preserve evidence; (2) whether
the alleged spoliator either negligently or intentionally spoliated evidence; and (3)
whether the spoliation prejudiced the nonspoliator’s ability to present its case or
defense.”


 Trevino, 969 S.W.2d at 954-55 (Baker, J. concurring); Schooley, 984
S.W.2d at 666.
          As for the first consideration (duty), “a duty arises only when a party knows or
reasonably should know that there is a substantial chance that a claim will be filed
and that evidence in its possession will be material and relevant to that claim.” 
Johnson, 106 S.W.3d at 722. As for the second consideration (negligent or
intentional spoliation),
 [a] spoliator can defend against an assertion of negligent or intentional
destruction [of evidence] by providing other explanations for the
destruction. For example, if the destruction of the evidence was beyond
the spoliator’s control or done in the ordinary course of business . . . . 
Importantly though, when a party’s duty . . . arises before the destruction
or when a policy is at odds with a duty to maintain records, the policy
will not excuse the obligation to preserve evidence.

Trevino, 969 S.W.2d at 957 (Baker, J., concurring); see Schooley, 984 S.W.2d at 667-68. As for the final consideration (prejudice), courts should consider, among other
matters, “the destroyed evidence’s relevancy.” Trevino, 969 S.W.2d at 958 (Baker,
J., concurring).
          As for the appropriate remedy, courts should fashion it on a case-by-case basis. 
Johnson, 106 S.W.3d at 721. Courts that have opted for sanctions, as opposed to
spoliation-presumption instructions, have, for example, dismissed the spoliator’s
action, rendered default judgment against the spoliator, or excluded evidence or
testimony. Trevino, 969 S.W.2d at 959-60 (Baker, J., concurring) (citations omitted). 
Alternatively, courts may give a spoliation-presumption jury instruction. See
Johnson, 106 S.W.3d at 721; Trevino, 969 S.W.2d at 960-61 (Baker, J., concurring). 
Courts may give two types of spoliation-presumption jury instructions: first, a
rebuttable presumption that the destroyed evidence is unfavorable to the spoliating
party, under which the burden shifts to the spoliating party to disprove the presumed
fact, or second, “an adverse presumption that the evidence would have been
unfavorable to the spoliating party,” under which instruction the burden does not
shift, but remains on the non-spoliating party to prove his case. Trevino, 969 S.W.2d
at 960-61 (Baker, J., concurring); see Johnson, 106 S.W.3d at 721 (expressly
recognizing second type of presumption instruction).
C.      Additional Facts Relevant to Spoliation
          The Reliant employee who was called to the scene, James Hefner, followed fire
department personnel’s instructions to cut the service out of the drop line in order to
protect firefighters from inadvertent electrical shock and to remove a possible source
for further damage. Hefner discovered that the drop line was burned in half, with a
portion hanging from the utility pole and the other half still connected to the electrical
equipment on the back of the garage.


 Hefner proceeded to “de-energize” the portion
of the drop line still attached to the pole by physically removing it with the assistance
of another Reliant employee. After having removed that portion of the drop line,
Hefner rolled it up, threw it in the back of his truck, and returned to the service center,
where he unloaded the drop line on the dock to be recycled. The same day that the
drop line was placed on the dock, it would have been put in a recycling bin with other
materials for recycling, at which point the drop line would “likely not [have been]
identifiable.” No one asked Hefner to preserve the drop line.
          The normal operating procedure for a Reliant employee who collected wire at
the scene of a fire was to put it in his truck and to unload the wire on Reliant’s dock
to be “cleaned up,” that is, to be recycled and salvaged. It was Reliant’s standard
operating procedure to dispose of drop lines recovered from fire scenes unless
someone in charge at the fire scene (such as a fire marshal or arson investigator)
asked the Reliant employee to retain the drop line. There was some evidence that
Reliant employees received on-the-job training to follow whatever instructions the
fire personnel give them at a fire site, including to preserve materials from the site. 
However, there was also evidence that, during its training of employees like Hefner,
Reliant did not discuss the need to preserve evidence.On May 25, 2000, the day following the fire, Farmers’s attorney faxed Reliant
a letter requesting that Reliant preserve “all evidence removed from the fire scene.” 
Reliant’s litigation specialist, Ronald Wendt, admitted receiving the letter; Wendt
also testified that, because he was busy on another matter, he assigned the case to a
Reliant claims manager, Karen Rogers. Months later, when Wendt began his
investigation and preparation for discovery and asked Rogers about the case, she
informed him that she had no knowledge of the case. Although Wendt testified that
the drop line “would be likely not identifiable” once it was placed in the recycling bin
on the day of the fire, he also testified that, had Rogers responded to Farmers’s
request on the day after the fire, “there would have been a chance” of recovering the
drop line.
          Farmers’s three loss investigators were unable to determine the cause of the fire
because, in part, a portion of the drop line had been removed, the fire had severely
burned some of the electrical components remaining at the site, and the gas company
had dug behind the garage to repair the gas piping.
D.     Discussion
          For purposes of our discussion, we assume without deciding that the drop line
was relevant and that its destruction prejudiced the Cardozas. 
          Although Reliant was undisputedly notified to preserve all relevant evidence
the day following the fire, the trial court could reasonably have given weight to
Reliant’s evidence that the drop line had already been placed in the recycling bin, in
the ordinary course of business, the day of the fire—that is, the day before Reliant
received Farmers’s notice. The trial court could also have considered Reliant’s
evidence (albeit disputed) that Reliant employees received on-the-job training to
follow instructions given them by fire personnel, including instructions to preserve
materials from the site, and that no fire personnel instructed Hefner to retain the drop
line. The trial court would also not have abused its discretion if it concluded that,
despite the fact that the drop line lay in the recycling bin for up to a week after
Reliant had received Farmers’s notice letter, the drop line could not have been
retrieved from the bin because it “would be likely not identifiable” once it had been
placed there.
          We thus hold that, based on the disputed evidence set out above, the trial court
would not have abused its discretion if it concluded either that (1) Reliant did not
intentionally destroy evidence relevant to the Cardozas’ claim


 or (2) Reliant had no
duty to preserve the drop line because it had already disposed of it, and could not
retrieve it, before receiving notice of the claim.
          Furthermore, given the disputed facts of this case relating to duty and intent,
the trial court would not have abused its discretion if it concluded that the Cardozas’
requested instruction was too extreme to fit the circumstances. The usual spoliation-presumption instruction is rebuttable in the ways set out above. See Trevino, 969
S.W.2d at 960-61 (Baker, J., concurring); see also Johnson, 106 S.W.3d at 721. In
contrast, the Cardozas requested an irrebuttable spoliation-presumption instruction
that, in effect, would have relieved them of their burden of proof at trial. Such an
instruction far exceeds the usual spoliation instruction; considering the evidence that
the trial court could have believed indicating that Reliant had not intentionally
destroyed the drop line, the trial court would not have abused its discretion in denying
such an instruction as being too extreme for the circumstances. Cf. Trevino, 969
S.W.2d at 959 (Baker, J., concurring) (“[C]ourts must be sensitive to certain
constitutional due process considerations and avoid depriving a party of the right to
have its case heard on the merits. . . . Thus, courts can dismiss an action or render a
default judgment when the spoliator’s conduct was egregious, the prejudice to the
nonspoliating party was great, and imposing a lesser sanction would be ineffective
to cure the prejudice.”).
Summary Judgment
          In the remainder of their sole issue, the Cardozas assert that the trial court erred
in rendering summary judgment against them. However, the only argument that the
Cardozas make in support of this assertion is that the trial court abused its discretion
in denying their motion for a spoliation instruction. We thus construe the Cardozas
to acknowledge in this Court, as they indicated to the trial court, that summary
judgment was erroneously rendered only if their spoliation motion was erroneously
denied. Because we have already held that the trial court did not abuse its discretion
in denying the Cardozas’ spoliation motion, we also hold that the trial court did not
err in rendering summary judgment against the Cardozas and in dismissing their
claims with prejudice.                          Conclusion
 
          We affirm the judgment of the trial court.


 
                                                                        Tim Taft
                                                                        Justice

Panel consists of Justices Taft, Alcala, and Hanks.