Affirmed and Opinion filed August 29, 2006








Affirmed and Opinion filed August 29, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01217-CV

____________

 

MICHAEL ALAN WALKER, Appellant

 

V.

 

THOMASSON LUMBER COMPANY AND

CAHABA PRESSURE TREATED FOREST
PRODUCTS, INC.,
Appellees

 



 

On Appeal from the 270th
District Court

Harris County, Texas

Trial Court Cause No. 03-19510

 



 

O P I N I O N

This is an appeal from the granting of two no-evidence
summary judgments in favor of the defendants in a product liability case.
Appellant, Michael Alan Walker, filed suit against appellees Thomasson Lumber
Company (AThomasson@) and Cahaba
Pressure Treated Forest Products, Inc. (ACahaba@) asserting that a
utility pole, manufactured by Cahaba and distributed by Thomasson, contained a
manufacturing defect that was the producing cause of injuries he sustained in a
fall from that pole. Appellees filed separate no-evidence summary judgment
motions, which the trial court granted. We affirm.








Factual and procedural background

Cahaba manufactures pine utility poles that it sells to
Thomasson, a company that sells and ships utility poles to end users. Some of
these poles were made according to specifications provided by Reliant Energy/HL
& P (AReliant@), a customer of
Thomasson.  Thomasson would purchase the poles from Cahaba and ship or deliver
them to a Reliant storage facility. Once delivered to the storage facility,
Reliant would use them as needed and would notify Thomasson, which then
invoiced Reliant for the poles used.

On May 2, 2001, appellant, then a power line technician
employed by Reliant, was participating in a two-week course designed to
evaluate utility pole-climbing techniques and teach other work related skills.
The training ground where Reliant conducted the training course contained a
total of twenty newly installed chromated copper arsenic (ACCA@) treated pine
utility poles. Appellant had purchased new, serrated gaffs recommended by
Reliant for climbing CCA poles. A gaff is a steel brace-type device that attaches to the
ankle and foot of a linemen to enable that lineman to climb a utility pole. That morning,
while ascending one of the poles, as he prepared to dig his right gaff into the
pole, appellant=s left foot gave way, causing him to fall
approximately twelve to fifteen feet to the ground. As the result of his fall,
appellant sustained injuries to his left arm and hand, neck, back, and head.
Appellant was immediately transported to the hospital to be treated for his
injuries.








Appellant did not know the reason he fell as he was not
looking down while he was climbing and he did not look to see why his foot came
out of the pole. The only witness who saw appellant fall was Reliant instructor
Dwayne DeVries. DeVries, who was thirty to forty feet from the pole, testified
he saw a small piece of wood come off the pole when appellant fell, close to
the area where appellant had his foot planted. Eldon Sivley, another Reliant
instructor, testified he inspected the pole after the ambulance left with
appellant and saw a place on the pole near where he thought appellant fell,
where the wood had splintered.[1] 
According to Sivley, this splinter was approximately five to six inches long
and a half inch wide and deep. Several people from Reliant examined the pole
the day of and the day after the fall, but they found nothing unusual about the
pole=s condition. It
was undisputed that splinters come off utility poles as a result of the act of
climbing them using gaffs. Also, it is a common occurrence for linemen=s gaffs to dislodge
from a pole causing them to slide down the pole or fall. Appellant himself
testified that climbing utility poles is difficult and that it was not unusual
for linemen to fall from poles during training.[2]

At the end of a training session, it was Reliant=s practice, at the
discretion of the instructors, to have the trainees remove the old poles and
install new poles for use during a future training session. The removed poles
were then discarded by Reliant pursuant to their normal disposal policy. The
pole at issue here was removed and disposed of by Reliant pursuant to its
normal disposal policy.

In June 2001, the Walker accident was discussed at a
meeting of Reliant=s Pole Committee. Randy DeWeese, Thomasson=s vice-president
of operations, attended the meeting on behalf of Thomasson. It was at this
meeting, some seven weeks after the accident, that Thomasson first heard about
Walker=s fall. By this
time, the pole at issue had already been disposed of by Reliant.








Appellant filed suit against appellees asserting numerous
causes of action, including a manufacturing defect products liability claim.
After extensive discovery, appellees filed traditional and no-evidence summary
judgments attacking all of appellant=s causes of
action. Regarding appellant=s manufacturing defect claim, both
appellees argued there was no evidence of a manufacturing defect as the basis
for summary judgment. In addition, Cahaba asserted appellant had no evidence
the alleged defect was a producing cause of appellant=s injuries.
Appellees also moved to strike appellant=s expert, James
Taylor. The trial court never signed an order striking Taylor as an expert but
an order was signed striking his affidavit. The trial court granted appellees= summary judgment
motions, and this appeal followed. The only cause of action at issue here is
appellant=s manufacturing defect products liability claim.

Discussion

Appellant raises two issues on appeal. First, appellant
argues he produced more than a scintilla of evidence in his summary judgment
response, and therefore, the trial court erred when it granted appellees= motions. In his
second, alternative issue, appellant argues he is entitled to a spoliation of
evidence presumption, and therefore, the granting of appellees= summary judgment
motions was improper. We address appellant=s issues in order.

I.        Appellant
failed to produce summary judgment evidence exceeding a scintilla.

A.      Standard
of Review








After sufficient time for discovery has passed, a party may
file a no-evidence motion for summary judgment if there is no evidence of one
or more essential elements of a claim or defense on which an adverse party
would have the burden of proof at trial. See Tex. R. Civ. P. 166a(i). In a no-evidence motion for summary
judgment, the movant must specifically state the elements as to which there is
no evidence. Howell v. Hilton Hotels Corp., 84 S.W.3d 708, 711 (Tex.
App.CHouston [1st
Dist.] 2002, pet. denied). In reviewing a no-evidence summary judgment, we
review the evidence in the light most favorable to the non-movant and disregard
all evidence and inferences to the contrary. Coastal Conduit & Ditching,
Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th
Dist.] 2000, no pet.). We sustain a no-evidence summary judgment if (1) there
is a complete absence of proof of a vital fact, (2) rules of law or evidence
bar the court from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of a vital
fact. Id. Less than a scintilla of evidence exists when the evidence
offered to prove a vital fact is so weak so as to do no more than create a mere
surmise or suspicion of its existence, and in legal effect is no evidence. Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). More than a
scintilla of evidence exists when the evidence rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions as to
the existence of the vital fact. Id. Because the propriety of summary
judgment is a question of law, we review the trial court=s decision de
novo. Brown v. Blum, 9 S.W.3d 840, 844 (Tex. App.CHouston [14th
Dist.] 1999, pet. dism=d w.o.j.).

          B.      Elements
of a Manufacturing Defect Cause of Action

Under Texas law, a manufacturing defect exists when a
product deviates, in its construction or quality, from the specifications or
planned output in a manner that renders  it unreasonably dangerous. Ridgway,
135 S.W.3d at 600. A plaintiff must prove the product was defective when it
left the hands of the manufacturer and the defect was a producing cause of
plaintiff=s injuries.[3]
Id. Expert testimony is not necessarily required to establish a
manufacturing defect. The Goodyear Tire & Rubber Co. v. Rios, 143
S.W.3d 107, 111 (Tex. App.CSan Antonio 2004, pet. denied). Nor is
direct evidence required to establish the existence of a defect, which often
can be proven only by circumstantial evidence. Id.  

C.      Appellant=s Circumstantial
Evidence of a Defect








In their no-evidence motions, both appellees asserted
appellant had no evidence of the existence of a defect in the utility pole that
existed at the time it left the hands of the manufacturer. In addition, Cahaba
argued appellant had no evidence that the alleged defect was a producing cause
of appellant=s injuries. Appellant argues that  he produced
sufficient circumstantial evidence to avoid summary judgment through his
explanation of the circumstances surrounding his fall from the pole.

If a plaintiff has no evidence of a specific defect in the
manufacture of a product, he may offer evidence of its malfunction as
circumstantial proof of the product=s defect. Gen.
Motors Corp. v. Hopkins, 548 S.W.2d 344, 349B50 (Tex. 1977) overruled
in part on other grounds by Turner v. Gen. Motors Corp., 584 S.W.2d 844,
847 (Tex. 1979). Appellant argues his testimony and report of the accident
combined with the testimony of DeVries, the only witness who actually saw
appellant fall, is evidence that the pole malfunctioned. However, appellant
admitted that he was not looking at his feet when he fell  and did not know why
he fell. In addition, appellant admitted his version of the cause of the
accident found in the Reliant accident report was what others had told him.
DeVries testified that while he saw appellant fall, he did not know what caused
appellant=s fall. The mere fact that an accident occurs with a
product is not sufficient proof of a defect for purposes of strict products
liability. Parsons v. Ford Motor Co., 85 S.W.3d 323, 330 (Tex. 2002).
Inasmuch as there was no witness who could testify as to the actual
circumstances of appellant=s accident, there is no circumstantial
evidence establishing a manufacturing defect. Rios, 143 S.W.3d at 112.
Therefore, appellant=s case rests entirely on the opinion
offered by his expert, James Taylor. Id.

D.      Appellant=s Expert Opinion
Evidence

As part of his summary judgment response evidence,
appellant submitted the deposition testimony of his expert witness. Appellant
also submitted an unsworn and undated affidavit allegedly prepared by Taylor.
Cahaba moved to strike Taylor as an expert witness and also separately filed
objections to appellant=s summary judgment proof, including Taylor=s affidavit. As
its basis for objecting to Taylor=s affidavit,
Cahaba argued Taylor=s opinions expressed therein were
unreliable and the affidavit was unsworn and undated.  The trial court
eventually signed an order striking Taylor=s affidavit.








The trial court conducted a hearing on Cahaba=s motion to strike
Taylor, but never signed an order striking Taylor as an expert witness.
Thomasson tells this court that we may not consider Taylor=s deposition
testimony because, according to Thomasson, the trial court struck Taylor.
Thomasson bases this conclusion on a docket entry made by the trial court
noting that Cahaba=s motion to strike expert was granted.
Thomasson mistakes a docket entry for a signed order. The law is clear in Texas
that a docket entry is not a written order and forms no part of the record that
an appellate court may consider for purposes of appeal. See In re
Burlington Coat Factory Warehouse of McAllen, Inc., 167 S.W.3d 827, 831
(Tex. 2005); Roever v. Roever, 824 S.W.2d 674, 676 (Tex. App.CDallas 1992, no
writ). Cahaba=s reference to the order striking Taylor=s affidavit will
not preclude our consideration of Taylor=s deposition
testimony for two reasons: (1) the order specifically refers only to the
affidavit; and (2) Cahaba argued that the affidavit was unsworn as an
additional reason to exclude it. As there is no written order striking Taylor,
his deposition testimony formed part of the summary judgment evidence
considered by the trial court and is part of the appellate record. 








However, our inquiry does not end there. When a trial court
admits expert testimony and on appeal that testimony is challenged as
constituting no evidence, an appellate court considers whether the expert
testimony is reliable under a de novo standard of review. Rios,
143 S.W.3d at 113. To be reliable, the expert=s testimony must
be grounded in scientific method and procedure such that it amounts to more
than subjective belief or unsupported speculation. E.I. du Pont de Nemours
& Co. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995). In Robinson,
the Texas Supreme Court enumerated a list of factors to determine the
reliability of expert testimony, including: (1) the extent to which the theory
has been or can be tested; (2) the extent to which the technique relies upon
the subjective interpretation of the expert; (3) whether the theory has been
subjected to peer review and publication; (4) the technique=s potential rate
of error; (5) whether the underlying theory or technique has been generally accepted
as valid by the relevant scientific community; and (6) the non-judicial uses
that have been made of the theory or technique. Id. Later, the Texas
Supreme Court explained that the existence of an analytical gap between the
data upon which the expert relies and the conclusion the expert reaches can be
an indicator the expert=s testimony is unreliable. Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 714 (Tex. 1997). In
addition, the Texas Supreme Court has recognized that the Robinson
factors do not always apply and a court may give weight to the skill and
experience of an expert in appropriate circumstances. Gammill v. Jack
Williams Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998).








Using the deposition testimony and documents produced in
the litigation, along with his experience, Taylor opined that the utility pole
from which appellant fell, which he had never seen, had compression wood which
caused Walker=s fall. Taylor testified he knows of no studies using
his experience-based methodology that would give a rate of error for it. In
addition, he was not aware of any literature in the field that validates his
methodology.  Taylor agreed there were only two scientifically recognized
methods for determining if a tree has compression wood: taking a boring sample
or a cross-section from the tree and examining those samples to verify if the
telltale compression wood rings are present.[4]
Taylor testified these are the only methods recognized in wood product
literature and are the conventional and mainstream methods of determining compression
wood=s existence.
Taylor also admitted this case represented the first case involving a fall from
a utility pole in which he rendered an opinion where he did not have an
opportunity to either physically examine at least a section of the utility pole
involved or photographs of that pole. Taylor also admitted that there were
other reasons why climbers fall from utility poles unrelated to any flaw in the
wood. Finally, Taylor did not testify as to any deviation of the utility pole
from Reliant=s specifications as the specifications were not in
evidence and he was unable to physically examine the pole. Taylor=s opinion that
appellant=s fall was caused by compression wood represents
nothing more than speculation and conjecture about what occurred at the time of
the accident, and therefore constitutes no evidence that a defect existed in
the pole. We hold appellant failed to produce more than a scintilla of evidence
that the pole was defective at the time it left the hands of the manufacturer.
Accordingly, we overrule appellant=s first issue.

II.       Appellant
is not entitled to a spoliation presumption.

In his second issue, appellant asserts he is entitled to a
spoliation presumption against Thomasson because Thomasson failed to preserve
the utility pole. Since he was entitled to a spoliation presumption, appellant
argues, the trial court erred when it granted Thomasson=s motion for
summary judgment. We disagree.

Spoliation is the improper destruction of evidence, proof
of which may give rise to a presumption that the missing evidence would be
unfavorable to the spoliator. Brumfield v. Exxon Corp., 63 S.W.3d 912,
919 n.3, 920 (Tex. App.CHouston [14th Dist.] 2002, pet. denied).
To raise the spoliation issue, the party seeking the presumption bears the burden
of establishing that the alleged spoliator had a duty to preserve the evidence
in question. Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718,
722 (Tex. 2003). This duty to preserve evidence arises when a party knows or
reasonably should know (1) that there is a substantial chance that a claim will
be filed and (2) that evidence in its possession or control will be material
and relevant to that claim. Id. When a party demonstrates an entitlement
to a spoliation presumption, the presumption precludes a court from granting a
summary judgment. Aguirre v. S. Tex. Blood & Tissue Center, 2 S.W.3d
454, 457 (Tex. App.CSan Antonio 1999, pet. denied). A trial
court=s denial of a
spoliation instruction is subject to an abuse of discretion standard of review.
See Johnson, 106 S.W.3d at 723.








The evidence was undisputed that Reliant, not Thomasson,
had possession and control of the utility pole at all times relevant to this
case. In addition, it was undisputed that it was Reliant, not Thomasson, that
disposed of the utility pole in its ordinary course of business. As Thomasson
did not have possession or control of the utility pole, appellant failed to
establish his entitlement to a spoliation presumption and the trial court did
not abuse its discretion by denying appellant an instruction on that
presumption. We overrule appellant=s second issue.

Conclusion

Having overruled both of appellant=s issues on
appeal, we affirm the trial court=s granting of
appellees= motions for summary judgment.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed August 29, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.                                                  









[1]  Appellant asserts that Sivley witnessed his fall.
However, Sivley testified that while he was present at the site and examined
the pole after the accident, he did not actually see appellant fall.





[2]  The record shows that Reliant made a decision to
switch from creosote treated utility poles to CCA poles. It is also clear that
CCA poles are more difficult to climb than creosote poles due to the fact the
treatment process makes the pole harder than a creosote pole. The record also
demonstrates that safety equipment is available that prevents a fall from a
pole in the event a gaff dislodges and this equipment is used when new linemen
enter Reliant=s training program. Appellant had previously been
qualified as a climber and therefore was not allowed to wear the safety
equipment.





[3]  In addition to a manufacturer being liable, Texas courts have followed
section 402A of the Restatement (Second) of Torts in holding that strict
liability in tort lies against the distributor placing thedefective product in
the stream of commerce. See FFE Transp. Serv., Inc. v. Fulgham, 154
S.W.3d 84, 88 (Tex. 2004) (citing Rourke v. Garza, 530 S.W.2d 704, 800
(Tex. 1975)). Therefore, Thomasson=s argument that it cannot be held liable under a
strict liability theory because it was only the distributor of the utility pole
at issue is without merit.





[4]  Compression wood has an uneven growth ring pattern,
such that one side is not as dense as the other side.