

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00046-CV

**IN RE** Brad **LARSEN**,
Rent Werx LLC D/B/A Larsen Properties, and Leah Larsen, Relators

Original Mandamus Proceeding[1]

Opinion by:   Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: May 5, 2021

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In this original mandamus proceeding, we address the propriety of death penalty and monetary sanctions imposed for spoliation of evidence. Because spoliation sanctions were imposed without any showing of a duty to preserve the evidence, and because there is no adequate remedy by appeal, we conditionally grant mandamus relief.

### FACTUAL BACKGROUND

This mandamus proceeding arises out of a civil suit filed by the real parties in interest, Stephen D. Schumacher and Shannon Schumacher, against relators, Brad Larsen, Leah Larsen, and Rent Werx LLC D/B/A Larsen Properties. The Larsens own Rent Werx, a property management company for which Stephen worked as a realtor and General Manager and handled

---

[1] This proceeding arises out of Cause No. 2018-CI-10309, styled *Schumacher v. Larsen*, pending in the 166th Judicial District Court, Bexar County, Texas, the Honorable John D. Gabriel, Jr. presiding.

the company's payroll. After failing to successfully renegotiate Stephen's compensation, the Larsens terminated Stephen's employment on April 30, 2018.

On May 3, 2018, Rent Werx hired a third-party provider of IT services, SUURV, to reformat Stephen's work computer for another employee to use. A SUURV technician reformatted Stephen's work computer and copied the files from the hard drive to a thumb drive. At the direction of another Rent Werx employee, the SUURV technician placed the thumb drive in a desk drawer in Stephen's old office on May 4, 2018. No person testified to seeing the thumb drive after May 4, 2018.

On May 17, 2018, Brad Larsen received a report from a third-party accounting firm, leading him to believe Stephen had embezzled over $200,000 from Rent Werx. The Larsens filed a claim with their insurance company on May 18, 2018, and on May 21, 2018, retained an attorney and reported the suspected embezzlement to the police. On May 22, 2018, the Larsens' counsel sent Stephen a notice to preserve any evidence related to the suspected embezzlement. Subsequently, Stephen asserted his computer's hard drive contained evidence showing he did not embezzle from Rent Werx.

### PROCEDURAL BACKGROUND

On June 4, 2018, Stephen sued the Larsens and Rent Werx for breach of contract, defamation, fraud, harassment, and intentional infliction of emotional distress. The Larsens and Rent Werx filed an answer and counterclaims against Stephen. Stephen's spouse, Shannon, later joined the suit as a plaintiff. The Schumachers sought death penalty and monetary sanctions based on the Larsens' spoliation of evidence; specifically, for reformatting Stephen's hard drive. The respondent in this case, trial judge John D. Gabriel, Jr., granted the motion and struck the Larsens' counterclaim.

On the Larsens' motion to reconsider, Judge Gabriel vacated the sanctions order. But on the Schumachers' motion, Judge Gabriel again reconsidered the matter; imposed monetary sanctions on the Larsens for the Schumachers' costs, expenses, and attorney's fees; and ordered the Larsens to produce the thumb drive. The Larsens filed a notice that after a diligent search, they were unable to produce the thumb drive. The Schumachers then filed a motion to enforce the order compelling the Larsens to produce the thumb drive. Granting the motion, Judge Gabriel imposed monetary and death penalty sanctions. In sum, Judge Gabriel ordered the Larsens to pay over $100,000 to the Schumachers for their costs, expenses, and attorney's fees; struck the Larsens' pleadings; found the Larsens liable to the Schumachers on the merits; and ruled that the Larsens may appear at trial and make objections as to damages, but may not present their own witnesses or cross-examine the Schumachers' witnesses.

The Larsens and Rent Werx then filed a petition for writ of mandamus in this court, with a record containing the relevant trial court filings and transcripts from the trial court hearing. The Schumachers filed a response to the petition for writ of mandamus. Judge Gabriel, as the respondent, did not file a response. Having received briefing from the parties, we now consider whether to grant mandamus relief.

### WRIT POWER

Our jurisdiction in original writ proceedings is limited to the "restrictions and regulations as may be prescribed by law." TEX. CONST. art. V, § 6. The Legislature has provided courts of appeals limited authority to issue writs of mandamus as provided in section 22.221 of the Texas Government Code, "Writ Power," as follows:

> (a)  Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court.
> (b)  Each court of appeals for a court of appeals district may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against:

> (1)  a judge of a district, statutory county, statutory probate county, or county court in the court of appeals district;
> (2)  a judge of a district court who is acting as a magistrate at a court of inquiry under Chapter 52, Code of Criminal Procedure, in the court of appeals district; or
> (3)  an associate judge of a district or county court appointed by a judge under Chapter 201, Family Code, in the court of appeals district for the judge who appointed the associate judge.

TEX. GOV'T CODE § 22.221(a), (b).

Under section 22.221, Texas courts of appeals may issue writs of mandamus under two circumstances. *See id.* First, a court of appeals or a single justice may issue a writ of mandamus against any respondent when "necessary to enforce the jurisdiction of the court." *Id.* § 22.221(a). Second, a court of appeals may issue a writ of mandamus against certain trial judge respondents "agreeable to the principles of law regulating those writs." *Id.* § 22.221(b). The Larsens do not argue a writ of mandamus is necessary to enforce this court's jurisdiction. We therefore consider whether issuing a writ of mandamus against a trial judge is, in this case, "agreeable to the principles of law regulating those writs." *See id.*

Because this original proceeding arises out of a civil proceeding in the trial court, we apply the principles of law laid out by the Supreme Court of Texas for the issuance of writs of mandamus against a trial judge when not necessary to enforce our jurisdiction. *See generally In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004) (orig. proceeding). Before a court of appeals may issue a writ of mandamus against a respondent trial judge relating to the trial judge's acts or omissions in a civil proceeding, a relator must file a petition and a record showing: (1) a clear abuse of discretion; (2) for which there is no adequate remedy by appeal. *Id.* at 135–36. "Mandamus is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding).

## CLEAR ABUSE OF DISCRETION

The Larsens filed a petition and record that they argue shows Judge Gabriel clearly abused his discretion. Specifically, the Larsens argue Judge Gabriel erred by imposing monetary and death penalty sanctions because, in the trial court, the Schumachers failed to show: (1) the Larsens spoliated evidence after they had a duty to preserve the evidence; (2) no alternative source would supplant the need for the spoliated evidence; and (3) the death penalty sanctions were excessive. In their response, the Schumachers argue fact issues preclude mandamus relief, the Larsens had a duty to preserve the evidence, and the Larsens' spoliation—and other discovery abuses—were sufficient to justify the severe sanctions that Judge Gabriel imposed.

### A. Standard of Review

"We review a trial court's imposition of a spoliation remedy . . . for an abuse of discretion." *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (quotation marks omitted). "With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court." *Id.* "On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential." *Id.* at 840. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Id.* "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id.*

### B. General Spoliation Standards

"A party's failure to reasonably preserve discoverable evidence may significantly hamper the nonspoliating party's ability to present its claims or defenses and can undermine the truth-

seeking function of the judicial system and the adjudicatory process." *Brookshire Bros.*, 438 S.W.3d at 16–17 (citations and quotation marks omitted). "In light of these concerns, courts have broad discretion to utilize a variety of remedies to address spoliation." *Id.* at 17. "[A] spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy." *Id.* at 14. "To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so." *Id.*

## C. The Duty to Reasonably Preserve Evidence

"The standard governing the duty to preserve [evidence] resolves two related inquiries: when the duty is triggered, and the scope of that duty." *Id.* at 20. A duty to preserve evidence arises only when a party "knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Id.* (quotation marks omitted). "A substantial chance of litigation arises when litigation is more than merely an abstract possibility or unwarranted fear." *Id.* (quotation marks omitted). "[T]he party seeking a remedy for spoliation must demonstrate that the other party breached its duty to preserve material and relevant evidence." *Id.* "If a party possesses a duty to preserve evidence, it is inherent that a party breaches that duty by failing to exercise reasonable care to do so." *Id.* A breach may be either intentional or negligent. *Id.*

## D. The Larsens' Arguments

The Larsens argue the Schumachers "failed to present Judge Gabriel with any evidence to establish [they] lost or destroyed the information on the computer and/or the Thumb Drive after [they] had a duty to preserve." They contend their duty to preserve evidence arose—at the earliest—on May 17, 2018, when they received the accounting report implicating Stephen in

embezzlement; the hard drive was reformatted on May 4, 2018; and there is no evidence of what happened to the thumb drive or when the thumb drive was lost or destroyed.

## E. The Schumachers' Arguments

The Schumachers argue several fact issues preclude mandamus relief, including: "(1) what happened to Stephen's computer; (2) what happened to the thumb drive; (3) Brad's culpability in loss of the evidence; and (4) the effect of loss of the evidence on Stephen's ability to defend against Brad's claims and on Stephen's ability to pursue his defamation claims." They also argue the Larsens had the burden to prove and explain what happened to the thumb drive, and they have failed to do so.

## F. No Evidence of Spoliation After the Duty to Preserve Evidence Arose

The Larsens terminated Stephen's employment based on a dispute about compensation. There is no evidence indicating anything illegal or suspicious about the Larsens' decision to terminate Stephen's employment. And there is no other evidence showing a substantial chance that Stephen would file a claim relating to his termination. Indeed, the Schumachers' original claims pertained to the Larsens' post-termination conduct. Consequently, when the Larsens terminated Stephen's employment on April 30, 2018, a duty to preserve did not arise. *See id.*

The Schumachers do not dispute that the Larsens' duty to preserve evidence arose on May 17, 2018, at the earliest. It is undisputed that the computer was reformatted on May 4, 2018, before the duty to preserve arose. However, neither the Larsens nor the Schumachers cite any evidence explaining what happened to the thumb drive and when. Instead, both sides argue the other side had the burden to prove what happened to the thumb drive. We therefore must determine which side had the burden of proof.

**G. Generally, the Party Alleging Spoliation Bears the Burden of Proof**

The Supreme Court of Texas has held "a party alleging spoliation bears the burden of establishing that the nonproducing party had a duty to preserve the evidence." *Brookshire Bros.*, 438 S.W.3d at 20. The party seeking a spoliation remedy also has the burden to "demonstrate that the other party breached its duty to preserve material and relevant evidence." *Id.*; *see Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003) ("[T]he Johnsons had to show that Wal-Mart disposed of the reindeer [causing the injury] after it knew, or should have known, that there was a substantial chance there would be litigation and that the reindeer would be material to it"). The Schumachers therefore had the burden to show the Larsens disposed of the hard drive or thumb drive after they knew, or should have known, that there was a substantial chance there would be litigation and that the hard drive or thumb drive would be material to it. *See Wal-Mart Stores*, 106 S.W.3d at 723. The Schumachers failed to produce any evidence showing what happened to the thumb drive, or whether the thumb drive was lost or destroyed on, before, or after March 17, 2018. Thus, the Schumachers failed to meet their burden of proof.

**H. The Larsens' Other Litigation Conduct Is Immaterial**

Citing to the Larsens' other litigation conduct, the Schumachers argue Judge Gabriel did not err by imposing severe spoliation sanctions. Specifically, in their response, the Schumachers identify the Larsens' filing of a motion to dismiss and raising frivolous objections to discovery requests, among other matters, to show severe sanctions were justified. However, the Larsens' various motions relating to spoliation sanctions were based solely on the Larsens reformatting Stephen's hard drive and losing or destroying the thumb drive, and not on the Larsens' other litigation conduct. *See* TEX. R. CIV. P. 21(a) (requiring every motion in the trial court to "state the grounds therefor"). In reviewing a ruling on a motion for death penalty sanctions, due process concerns generally require us to confine our scope of review to the grounds stated in the motion.

*See id.*; *In re Estate of Perez-Muzza*, 446 S.W.3d 415, 424 (Tex. App.—San Antonio 2014, pet. denied).

## I. Conclusion as to Abuse of Discretion

Imposing a spoliation sanction without the requisite showing that a party lost or destroyed evidence while having a duty to preserve that evidence is a clear abuse of discretion. *Brookshire Bros.*, 438 S.W.3d at 20; *Wal-Mart*, 106 S.W.3d at 723. Judge Gabriel imposed spoliation sanctions on the Larsens for reformatting a hard drive and losing or destroying a thumb drive without any evidence showing the Larsens had a duty to preserve the hard drive or thumb drive. Consequently, Judge Gabriel clearly abused his discretion.

### NO ADEQUATE REMEDY BY APPEAL

Having concluded Judge Gabriel clearly abused his discretion, we next consider whether the Larsens lack an adequate remedy by appeal. *See TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 919–20 (Tex. 1991) (orig. proceeding). Discovery sanctions generally are subject to review on appeal from a final judgment. *Id.* at 919. But when "a trial court imposes sanctions which have the effect of adjudicating a dispute, whether by striking pleadings, dismissing an action or rendering a default judgment, but which do not result in rendition of an appealable judgment, then the eventual remedy by appeal is inadequate." *Id.* This is true when, as here, the relator "must suffer a trial limited to the damages claimed." *Id.* "The entire conduct of the litigation is skewed by the removal of the merits of [relator's] position from consideration and the risk that the trial court's sanctions will not be set aside on appeal." *Id.* "Resolution of matters in dispute between the parties will be influenced, if not dictated, by the trial court's determination of the conduct of the parties during discovery." *Id.* So when, as here, "a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by

eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment." *Id.* at 920. We hold that the Larsens' remedy by appeal from a final judgment after trial is inadequate. *See id.*

CONCLUSION

The Larsens' petition for writ of mandamus and the mandamus record show: (1) a clear abuse of discretion; (2) for which there is no adequate remedy by appeal. *See Prudential*, 148 S.W.3d at 135–36. Because granting mandamus relief to correct a trial judge's clear abuse of discretion is agreeable to the governing principles of law, we conditionally grant the Larsens' petition and order Judge Gabriel to vacate the spoliation sanctions rendered against the Larsens. The writ will issue only if the sanctions are not timely vacated as per our order.

Patricia O. Alvarez, Justice