

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00791-CV

**IN THE ESTATE OF** Aminta **PEREZ-MUZZA**

From the County Court at Law No. 2, Webb County, Texas
Trial Court No. 2007PB7000089-L2
Honorable Jesus Garza, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Marialyn Barnard, Justice

Delivered and Filed:  July 16, 2014

REVERSED AND REMANDED

Veronica Peña appeals the trial court's dismissal of her lawsuit contesting the will of Aminta Perez-Muzza.  The trial court dismissed the contest: (1) because Veronica lacked standing to contest the will; and (2) to sanction Veronica for false statements she filed with the trial court and this court.  Because we conclude that neither ground warranted dismissal, we reverse the judgment of the trial court and remand the cause for further proceedings.

### BACKGROUND

Several months prior to her death in 2007, Perez-Muzza executed a will devising all of her real and personal property to her nephew, Rolando Peña, and naming him the independent executor of her estate.  At the time of the will's execution, Perez-Muzza also established a certificate of deposit account, designating various "payable on death" beneficiaries, including Yolanda Cuellar

and Veronica.[1]  The trial court admitted the will for probate in 2007, and Veronica initiated the instant suit contesting the will in 2009.  The trial court dismissed the case for want of prosecution in January 2011 and November 2011, and subsequently reinstated the case in both instances.  In February 2012, Veronica signed an affidavit stating: "I have never received any jewelry, much less any jewelry from Rolando Peña acting as executor under a will whose existence he denied."  In March 2012, the trial court again dismissed the case for want of prosecution.  Veronica appealed and this court reversed the dismissal and remanded the case, holding that the trial court failed to provide Veronica with notice of the dismissal.  *See In the Estate of Perez-Muzza*, No. 04-12-00178-CV, 2013 WL 979128, at*1 (Tex. App.—San Antonio Mar. 13, 2013, no pet.) (mem. op.).  In July 2013, Veronica testified in an oral deposition that, after Perez-Muzza's death, Veronica received some jewelry from Yolanda that had once belonged to Perez-Muzza.  Rolando subsequently filed a motion to dismiss the contest and the trial court conducted an evidentiary hearing.  Veronica appeared at the hearing only through her attorney.  Thereafter, the trial court granted the motion to dismiss and entered findings of fact and conclusions of law.

## STANDARD OF REVIEW

We review a trial court's findings of fact and conclusions of law following a bench trial under the same standards we employ when reviewing a jury's finding.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).  When reviewing the sufficiency of the evidence supporting those findings, "we do not serve as a fact finder, pass upon the credibility of witnesses, or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported."  *Hausman v. Hausman*, 199 S.W.3d 38, 41 (Tex. App.—San Antonio 2006, no pet.).  A trial court's conclusion of law presents a legal question that we review

---

[1] Yolanda is the aunt of both Perez-Muzza and Veronica.  Both are relatives of Perez-Muzza on the maternal side of her family.

*de novo*. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold a conclusion of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Miranda v. Byles*, 390 S.W.3d 543, 553 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

We review a trial court's imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Kings Park Apartments, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 101 S.W.3d 525, 540 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). Our review is not limited to evaluating the sufficiency of the evidence supporting the trial court's findings, "rather, we make an independent inquiry of the entire record to determine if the court abused its discretion by imposing the sanction." *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 812 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

### STANDING

The trial court granted Rolando's motion to dismiss the contest after concluding that Veronica lacked standing. Specifically, the trial court concluded that Veronica was estopped from contesting the will because: (1) she accepted jewelry under the will; (2) she accepted cash under the estate plan; and (3) she entered into an agreement with other estopped individuals.

Any "person interested in an estate" has standing to contest a probate proceeding. TEX. EST. CODE ANN. § 55.001 (West Pamph. 2013). A "person interested" is an "heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." *Id.* at § 22.018 (West Pamph. 2013). Under the equitable doctrine of estoppel, a "person interested" lacks standing, however, if they have accepted benefits under the will. *In re Estate of Davis*, 870 S.W.2d 320, 322 (Tex. App.—Eastland 1994, no writ.). When raised, the issue of standing must

be tried "separately and in advance of a trial of the issues affecting the validity of the will." *In re Estate of Hill*, 761 S.W.2d 527, 528 (Tex. App.—Amarillo 1988, no writ). It is well settled that the contestant of a will bears the burden of proving his standing. *Womble v. Atkins*, 160 Tex. 368, 331 S.W.2d 297 (1960); *Sheffield v. Scott*, 620 S.W.2d 691, 693 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

## A. Acceptance of Jewelry

The trial court concluded that Veronica was estopped from challenging the will's validity because Veronica "accepted jewelry that passed under [Perez-Muzza's will] and never returned it." The trial court found that Perez-Muzza owned valuable jewelry at the time of her death which passed to Rolando under the general provisions of the will. The trial court found that before her death, Perez-Muzza "expressed her wish that [Rolando] would give this jewelry to members of the family." Rolando testified that at some point after Perez-Muzza's death, he gave some of the jewelry to Perez-Muzza's relatives, including Yolanda. Rolando did not give any jewelry to Veronica. Although Veronica stated in her February 2012 affidavit that she had "never received any jewelry," she stated in her July 2013 deposition that she received some jewelry from Yolanda:

> Q: [Referring to the July 2012 affidavit], you said you never received any jewelry. We talked about that. Specifically, do you have any jewelry or have you ever had any jewelry that belonged to Aminta at any time?
> A: What I believe is that some jewelry belonged to my aunts, and that jewelry was given to them as gifts from Rolando because the jewelry belonged to Rolando, and that's what I know. And then I was told that it was given to him by Aminta.
> Q: Okay. And I apologize, I think I was asking have you ever had any jewelry that belonged to Aminta?
> A: Prior to her death, I do not recall. After her death, I believe that there was some jewelry that were gifts to my aunts that belonged—that that jewelry belonged to them because it was given to them by Rolando as gifts and that it once belonged to Aminta.
> Q: Did you get any of it?
> A: Did I get any of what?
> Q: Of the jewelry.
> A: The jewelry that belonged to my aunts?
> Q: Yes.

A: The jewelry that belonged to my aunts, I received a necklace that was costume jewelry, yes. That belonged—that jewelry belonged to my aunts, Lichita and Yolanda.
Q: When did you get that jewelry?
A: I have no idea.
Q: After Aminta died?
A: Oh, that was after, several years I think, maybe several months, years. I'm not sure when.
. . .
Q: And what did they tell you when they gave you the jewelry?
A: That they had this jewelry and that they wanted us to have some jewelry that they had been given and so they gave it to us.
Q: Explained it had been Aminta's jewelry?
A: I had already been told that some of the jewelry belonged to Aminta.

On appeal, Veronica challenges the sufficiency of the evidence underlying the trial court's findings of fact related to the jewelry. Because the legal question presented here is whether estoppel is applicable based on these facts, we will assume, without deciding, that the trial court's findings of fact are supported by sufficient evidence.

"It is a fundamental rule of law that a person cannot take any beneficial interest under a will and at the same time retain or claim any interest, even if well founded, which would defeat or in any way prevent the full effect and operation of every part of the will." *Trevino v. Turcotte*, 564 S.W.2d 682, 685–86 (Tex. 1978). This rule is based on "equity and public policy." *Id.* at 689. "It is designed to prevent one from embracing a beneficial interest devised to him under a will, and then later asserting a challenge of the will inconsistent with the acceptance of benefits." *Id.* Thus, when a person accepts and retains property devised to him by a will, he may be estopped from later contesting the will. *See In re Estate of McDaniel*, 935 S.W.2d 827, 829 (Tex. App.—Texarkana 1996, writ denied). This is true regardless of whether the devisee had knowledge of the legal effect of accepting benefits under the will. *Id.*

When a devisee is estopped in this manner, courts also extend estoppel to persons who succeed to an interest in the will through their status as an heir of the devisee. EUNICE L. ROSS &

THOMAS J. REED, WILL CONTESTS § 3:14 (2d ed. 2014); *see, e.g.*, *Trevino*, 564 S.W.2d at 687; *see also, e.g.*, *Mansour v. Rabil*, 177 S.E.2d 849, 857 (N.C. 1970). Thus, in *Trevino*, the Texas Supreme Court imputed a devisee's estoppel to persons who claimed standing in their capacity as heirs of the devisee. 564 S.W.2d at 687. In that case, Sarita East died and left a will naming Edgar Turcotte as independent executor of her estate. *Id.* at 684. Edgar was also a devisee of substantial bequests under the will, which he accepted and possessed at the time of his subsequent death. *Id.* at 684, 686. After Edgar's death, his children, who were the sole devisees under his will, contested East's will. *Id.* at 684. The children, who were not heirs of East, argued they were "persons interested" in the East estate as the sole devisees under Edgar's will. *Id.* After determining that Edgar's acceptance of benefits under East's will estopped him from contesting her will, the Court held that Edgar's acceptance was "binding upon [the children] in their capacity as heirs, legatees, or personal representatives of [Edgar]." *Id.* at 687.

Rolando argues that *Trevino* should be broadly interpreted to impute a devisee's estoppel to any person who accepts and retains property from the devisee which passed under the will. Rolando's position is consistent with the following conclusion of law of the trial court: "A person who has accepted property that passed under a will may be estopped from challenging the will's validity if he or she *obtained the property by an assignment or gift* from a devisee or legatee under the will." (emphasis added). We can find no authority, however, to support such an expansive interpretation of *Trevino*. The *Trevino* Court imputed Edgar's estoppel to his children where their only claim as "persons interested" in the East estate was by way of the property East devised to Edgar. *Id.* at 684. Edgar's children claimed an interest in the East estate by using the very property that Edgar—and by extension, his estate—had already accepted and maintained for his beneficial use. *See id.* at 686–87. Estoppel prevented Edgar's estate from accepting a beneficial interest under East's will and at the same time seeking to defeat East's will based on that interest. *See id.*

Here, Veronica does not rely on the necklace to establish her standing to contest Perez-Muzza's will and Rolando does not dispute that Veronica is a "person interested" in the estate as an heir-at-law of Perez-Muzza, notwithstanding her interest in the necklace.

Moreover, a person cannot be said to have received property "under a will" merely because the person obtained the property directly from a devisee of the will. *Id.* at 685. Even if estoppel did arise in that instance, it would be tenuous—and would serve no equitable purpose—to further impute that estoppel to subsequent transferees who accept property from the person who received it from the devisee. Such is the instant case. Perez-Muzza devised the jewelry to Rolando, and he gave the jewelry to Yolanda. Yolanda subsequently gave at least one piece of the jewelry to Veronica. Even if the transfer from Rolando to Yolanda is considered under the will, the same cannot be said of Yolanda's subsequent transfer of the jewelry to Veronica. Accordingly, we hold that Veronica's receipt and possession of the jewelry from Yolanda did not estop her from contesting the will.

### B. Acceptance of Certificate of Deposit Proceeds

The trial court also concluded that Veronica was "further estopped from challenging the validity of [Perez-Muzza's will] because she accepted, and did not return, cash that belonged to [Perez-Muzza] which was distributed to [Veronica] as part of [Perez-Muzza's] estate plan." Rolando testified that shortly after Perez-Muzza executed the will, she established a certificate of deposit account listing several family members, including Yolanda and Veronica, as "payable on death" beneficiaries. Upon Perez-Muzza's death, the funds were distributed to the beneficiaries. Rolando argues that because these funds were distributed as part of Perez-Muzza's "estate plan," Veronica should be estopped as though she took directly under the will. Veronica contends that she should not be estopped because these funds were nontestamentary, and therefore, did not pass to her under the will.

We agree with Veronica's contention. A "payable on death" or "P.O.D." account is an account with a financial institution that is payable to one or more named payees upon the account owner's death. *See Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990); TEX. EST. CODE ANN. § 113.004(4) (West Pamph. 2013); TEX. EST. CODE ANN. § 113.001(5) (West Pamph. 2013). The payment of account funds to the beneficiary of a P.O.D. account is considered a nontestamentary transfer. TEX. EST. CODE ANN. § 111.052(b) (West Pamph. 2013); TEX. EST. CODE ANN. § 113.158 (West Pamph. 2013). Proceeds from a nontestamentary transfer pass outside of probate proceedings and the personal representative of the decedent's estate has no authority with respect to them. *Irwin v. Irwin*, 307 S.W.3d 383, 385 (Tex. App.—San Antonio 2009, pet. denied). Additionally, no rights to the proceeds accrue to those who would take under the decedent's will or through the laws of intestacy. *Id.*

We have found no authority imposing estoppel on a will contestant because the contestant is also a beneficiary of nontestamentary assets. Estoppel applies only to those who "take any beneficial interest under a will," and nontestamentary assets necessarily do not pass "under a will." *Trevino*, 564 S.W.2d 685; *see Gregory v. Rice*, 678 S.W.2d 603, 608 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Rolando cites *Teal v. Lakey*, 181 S.W. 759 (Tex. Civ. App.—Beaumont 1915, writ ref'd) to support his contention that a party's acceptance of nontestamentary property results in estoppel to contest a will. *Teal*, however, does not stand for that proposition. In that case, the decedent deeded a parcel of land to one of her heirs prior to the decedent's death. 181 S.W. at 761. After concluding that the transfer constituted an advancement of the decedent's estate, the court held that "estoppel" precluded the heir from claiming her intestate share of the estate. *Id.* Because the decedent died intestate, the court's holding did not concern nontestamentary property passing under a will. Rather, it premised its decision on the doctrine of advancement, which has no application when there is a will. *Bailey v. Bailey*, 212 S.W.2d 189,

191 (Tex. Civ. App.—Waco 1948, writ ref'd); *see* TEX. EST. CODE ANN. § 201.151(a) (West Pamph. 2013). Accordingly, we hold that Veronica is not estopped from contesting the will because she retained nontestamentary assets from Perez-Muzza.

### C. Contingent Fee Agreement

The trial court further found that Veronica, Yolanda, and other maternal relatives of Perez-Muzza entered into an contingency fee agreement (Agreement) with Veronica's attorney in which the relatives agreed to share among themselves, in certain proportions, any recovery resulting from a future settlement of the will contest. The trial court concluded that Yolanda was estopped by her acceptance of cash, jewelry, and other property under the will, and that the Agreement "effected a cross-conveyance of interests" among the parties, and "[b]ecause of the cross-conveyance of interests in the will contest claim effected by the [Agreement], all the parties to that agreement share in the estoppel" of Veronica and Yolanda. Citing *Trevino*, Rolando further argues that Veronica is estopped by the agreement because it represents an attempt to circumvent Veronica's estoppel resulting from her acceptance of the jewelry and certificate of deposit proceeds.

First, we can find no authority supporting the proposition that a person may be estopped from contesting a will merely by being a party to an agreement with an individual who is estopped. Second, Rolando's reliance on *Trevino* is misplaced. After determining that Edgar's children were estopped from contesting East's will, the *Trevino* Court further considered whether two of the children, Robert and Patrick Turcotte, could nevertheless establish standing by purchasing assignments in the East estate from East's heirs with undisputed standing. *Trevino*, 564 S.W.2d at 687. The Court observed that, ordinarily, an individual may establish standing to contest a will by purchasing an assignment of interest in the estate from a party with standing; however, the Court held that it would be "inequitable and unjust" to allow Robert and Patrick to establish standing with the assignments when they were otherwise estopped by Edgar's acceptance of

benefits under East's will. *Id.* at 687, 690. Therefore, the Court held that a person who is personally estopped from contesting a will as a beneficiary of an estopped devisee may not "unestop" himself by obtaining an interest in the estate by assignment from an heir with standing. *Id.* at 688, 690.

In this case, Veronica is not attempting to avoid estoppel and establish standing by obtaining an assignment of an interest in Perez-Muzza's estate. As discussed, Veronica bases her claim of standing on her undisputed status as an heir-at-law of Perez-Muzza, not through any assignment. Moreover, Veronica is not using the agreement to avoid estoppel because, as discussed, she is not estopped from contesting the will by acceptance of the jewelry or certificate of deposit assets. Accordingly, Veronica's status as a party to the agreement does not result in estoppel.

Rolando further notes that Yolanda is estopped from contesting the will because she accepted jewelry and property from Perez-Muzza's estate. Rolando argues that it would be "inequitable and unjust" to allow Yolanda to retain all of this property and at the same time gain a share of the estate through the possible settlement contemplated by the Agreement. Even assuming, without deciding, that Yolanda is estopped in this regard, Yolanda is not a party to the will contest, and her standing is not an issue in this appeal.

### SANCTIONS

The trial court concluded that dismissal of Veronica's contest, with prejudice, was independently justified as a sanction under both Texas Rule of Civil Procedure 13 and the trial court's inherent power. The trial court found that Veronica made "false, misleading, and groundless statements" in the February 2012 affidavit, in a subsequent memorandum to the trial

court, and in her later appellate brief to this court during the 2013 appeal.[2] The trial court concluded that Veronica falsely stated in these documents that she had not received any jewelry under the will, but later testified in her July 2013 deposition that she had received such jewelry.

Texas Rule of Civil Procedure 13 authorizes a trial court to sanction an attorney or other party for making a statement in a pleading, motion, or other paper, "which they know to be groundless and false, for the purpose of securing a delay in the trial . . . ." TEX. R. CIV. P. 13. Rule 13 is applicable when a party files an affidavit with the court containing a materially false statement. *See Metzger v. Sebek*, 892 S.W.2d 20, 53 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Upon determination that a party has violated Rule 13, the trial court may impose an "appropriate" sanction, including dismissal of the action with prejudice. TEX. R. CIV. P. 13; TEX. R. CIV. P. 215.2(b)(5).

A trial court may also impose sanctions on a party pursuant to its inherent power. *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding). "This inherent power exists to enable a court to effectively perform its judicial functions and to protect its dignity, independence, and integrity." *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.). This power is limited, however, "to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions" of the court. *Kutch v. Del Mar College*, 831 S.W.2d 506, 510 (Tex. App.—Corpus Christi 1992, no writ). The core functions of the court include "hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments." *In re Tex. Dept. of Family & Protective Servs.*, 415 S.W.3d 522, 529 (Tex. App.— Houston [1st Dist.] 2013, orig. proceeding). Thus, a trial court may, under its inherent power,

---

[2] We note, however, that the trial court lacked jurisdiction to enter sanctions related to a filing in this court. *Johnson v. Waters at Elm Creek, L.L.C.*, 416 S.W.3d 42, 50 (Tex. App.—San Antonio 2013, pet. denied).

sanction a party who makes a false statement of material fact to the court. *See Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 448 (Tex. App.—Austin 2004, pet. denied).

Under either source of authority, a trial court's imposition of sanctions must be "just." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) (determining whether a sanction is "appropriate" under Rule 13 is equivalent to determining whether it is "just" under Rule 215); *Shook v. Gilmore & Tatge Mfg. Co.*, 851 S.W.2d 887, 892 (Tex. App.—Waco 1993, writ denied) (sanctions imposed under court's inherent authority subject to Rule 215's "just" requirement). The imposition of sanctions is "just" if: (1) there is a direct relationship between the offensive conduct and the sanction imposed; and (2) the sanctions are not excessive. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). A sanction is not excessive when it is "no more severe than necessary to satisfy its legitimate purposes." *Id.* In other words, "[t]he punishment should fit the crime." *Id.* As part of this inquiry, the trial court must "consider the availability of less stringent sanctions, and in all but the most exceptional cases, actually test the lesser sanctions" before imposing them. *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004).

For the purposes of appellate review, we assume without deciding that Veronica's affidavit and memorandum contained false statements concerning her receipt of the jewelry and that this conduct is sanctionable under both Rule 13 and the trial court's inherent power. We conclude, however, that the imposition of such a severe sanction is not justified in this case. In addition to being limited by the standards discussed above, a trial court's discretion to impose sanctions is further limited by constitutional due process. *TransAmerican*, 811 S.W.2d at 917. Due process concerns are implicated when the trial court dismisses a party's claim based on conduct during discovery rather than on the claim's merits. *Id.* at 918. This sanction is the "most devastating a trial court can assess against a party." *Id.* at 917–18. Commonly referred to as a "death-penalty

sanction," it is intended to be a "remedy of last resort." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 179 (Tex. 2012). Thus, a death-penalty sanction may not be assessed absent the offending party's "flagrant bad faith" or "callous disregard for the responsibilities of discovery under the rules." *TransAmerican*, 811 S.W.2d at 918. In addition, "a death-penalty sanction cannot be used to adjudicate the merits of claims or defenses unless the offending party's conduct during discovery justifies a presumption that its claims or defenses lack merit." *Paradigm Oil*, 372 S.W.3d at 184. "[E]ven if it is appropriate to use discovery sanctions to punish a litigant for false statements (as distinguished from the more common varieties of discovery abuse), a court may not impose death-penalty sanctions unless the circumstances warrant a presumption that the plaintiff's claims are wholly without merit." *Fletcher v. Blair*, 874 S.W.2d 83, 86 (Tex. App.—Austin 1994, writ denied).

A presumption that a party's claim lacks merit is not justified "when the party makes a false statement about matters unrelated to the core elements of [the cause of action]." *Id.* Here, the false statement in the affidavit concerns whether Veronica received any of the jewelry that passed to Rolando under the will. This statement had no bearing on any material issue before the trial court during the pretrial proceedings. Although the trial court found that Veronica used the affidavit "as a means of providing false and misleading testimony to the [trial court] on the estoppel issue," we have held, as a matter of law, that the circumstances under which Veronica received the jewelry do not result in estoppel or any other impediment to her standing. Accordingly, we hold that the trial court's imposition of the death-penalty sanction in this case was a violation of due process. *See id.* (false statement regarding educational background did not warrant death-penalty sanction where statement was immaterial to the relevant issues in the proceeding); *see also Lanfear v. Blackmon*, 827 S.W.2d 87, 91 (Tex. App.—Corpus Christi 1992, orig. proceeding) (death-

penalty sanction not justified where false statement not related to the central issues in the proceeding).

Moreover, the trial court failed to consider the availability of less stringent sanctions. To ensure that sanctions are "just," the trial court is required to consider "less stringent measures before settling on severe sanctions." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003). The trial court must "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Cire*, 134 S.W.3d at 842. Unless the offending party's conduct is egregious, constituting a blatant disregard for the discovery process, the trial court is required to "test the effectiveness of lesser sanctions by actually implementing and ordering each sanction that would be appropriate to promote compliance with the trial court's orders in the case." *Id.* Here, the trial court entered the following conclusion of law related to lesser sanctions:

> Based on the totality of the circumstances and the evidence, no lesser sanction that [sic] dismissal with prejudice would be sufficient to deter, alleviate, and counteract the bad faith abuse of the judicial process and the interference with core judicial functions that [Veronica] committed in this case.

Other than this single sentence, the record is completely devoid of any indication that the trial court considered a less stringent sanction. During the hearing on the motion to dismiss, the trial court did not address the proposed sanctions. A conclusory statement that no lesser sanction would be effective is not sufficient to constitute the required analysis of available sanctions and the reasoned explanation of the sanction's appropriateness. *GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729; *Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores, Inc.*, 418 S.W.3d 229, 234 (Tex. App.—Dallas 2013, no pet.). Although the trial court found that it had previously dismissed the case on multiple occasions for want of prosecution, those dismissals were not related to the offending conduct. Even when the offending party engages in intentional and blatant discovery abuse, consideration of less stringent sanctions is still required.

*In re M.J.M.*, 406 S.W.3d 292, 298 (Tex. App.—San Antonio 2013, no pet.). Accordingly, the trial court abused its discretion by dismissing the case as a sanction.

## CONCLUSION

The trial court erred by dismissing Veronica's will contest for lack of standing. The trial court abused its discretion when it dismissed the contest as a sanction. The judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings.

Catherine Stone, Chief Justice