

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00360-CV

Dolores Angelina **DE LA GARZA**, Clarissa De La Garza, Cristina Lorena Benavides, Servando Roberto Benavides, and Delia Hilda Benavides Martinez,
Appellants

v.

Carlos **ZAFFIRINI**, Sr. d/b/a Zaffirini and Castillo,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2021CVH002075D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by: Lori I. Valenzuela, Justice

Sitting: Irene Rios, Justice
Lori I. Valenzuela, Justice
Velia J. Meza, Justice

Delivered and Filed: March 19, 2025

AFFIRMED

Appellants Dolores Angelina De La Garza, Clarissa De La Garza, Cristina Lorena Benavides, Servando Roberto Benavides, and Delia Hilda Benavides Martinez appeal from the trial court's order denying their motion to dismiss appellee Carlos Zaffirini, Sr. d/b/a Zaffirini and Castillo's ("Zaffirini") amended motion for sanctions pursuant to the Texas Citizens Participation Act ("TCPA"). A motion to dismiss under the TCPA "must be filed not later than the 60th day

after the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE § 27.003(b). We hold appellants' TCPA motion was untimely and affirm the trial court's order.

## BACKGROUND

Appellants own mineral interests located beneath several tracks of land in the Eagle Ford Shale which we refer to as the "Ranch." For almost 20 years, Zaffirini represented appellants on several occasions on a contingency basis, which resulted in Zaffirini acquiring a meaningful portion of the surface and mineral interests located underneath the Ranch. In 2017, Zaffirini and appellants again began discussing further representation.

The proposed 2017 representation stemmed from Zaffirini's belief that the current producer failed to complete the requirements under the terms of the lease between the current producer, appellants, and Zaffirini. Under the proposal, Zaffirini was to negotiate a release of the mineral rights, and then represent appellants and himself in finding a new producer to lease the newly released rights. On September 20, 2017, Zaffirini sent appellants an email detailing the scope of his representation and attached a draft agreement containing the following contingency fee provisions:

1. Twenty percent (20%) of any and all recovery obtained from [current producer] or any of its companies without the necessity of filing suit. In the event suit must be filed to recover from [current producer] or any of its companies, the fee shall instead, be 30% of any and all recovery obtained for [appellants]. The term recovery includes cash recovered, or any royalty recovered *over and above the 25% royalty that [appellants] already holds. [Zaffirini] will receive no part of the 25% royalty [appellants] already holds and receives.*

2. If [Zaffirini] does not recover anything, [appellants] will owe [Zaffirini] no attorney's fees.

(emphasis in original).

Additionally, the email included a copy of a prior agreement between the parties so appellants could compare the contingency fee agreement in the prior agreement with the draft

agreement sent by Zaffirini. In the body of the email, Zaffirini represented to appellants that the new agreement was "identical" to the earlier agreement except for, as relevant here, a change in the contingency fee:

> In the [earlier case,] we agreed to a 30% contingency fee and 40% in the event of an appeal. In this instance, I have provided for a 20% fee, if without filing suit, we obtain any recovery of cash, or royalty over and above the 25% you already own and receive. And [sic] after filing suit, 30% of any cash recovery, or royalty over and above the 25% you already own and receive . . . . Let's try to meet next week so we can discuss this matter and decide if you wish to proceed.

Over the course of the next several days, appellants went to Zaffirini's office and signed the new agreement (the "2017 Agreement"). The language of the 2017 Agreement's contingency fee structure differed from the draft agreement attached to Zaffirini's email sent days before in that the 2017 Agreement included, as shown below in provision number two, a contingency fee to Zaffirini of "twenty percent (20%) of *any and all cash received from any third party* leasing such released minerals[.]" (emphasis added):

1. Twenty percent (20%) of any and all recovery obtained from [current producer] or any of its related companies without the necessity of filing suit. In the event suit must be filed to recover from [current producer] or any of its companies, the fee shall instead, be 30% of any and all recovery obtained for [appellants]. The term recovery includes any cash recovered, or any royalty recovered *over and above the 25% royalty that [appellants] already holds. [Zaffirini] will receive no part of the 25% royalty [appellants] already holds and receives.*

2. In the event that [Zaffirini], without having to file suit, secures a release from [current producer] or any of its companies, of part or all of the minerals under the [earlier lease] described above, then instead of the fees specified in paragraph [1.] above, the fee will be twenty percent (20%) of any and all cash received from any third party leasing such released minerals and twenty (20%) of any royalty received under such new lease in excess of the 25% royalty that [appellants] presently holds. If the release from [current producer] is obtained after filing suit against them, then the fee will be thirty percent (30%) of any and all cash received from any third party leasing such released minerals and thirty percent (30%) of any royalty received under such new lease in excess of the 25% royalty that [appellants] presently holds. *[Zaffirini] will receive no part of the first twenty five percent (25%) royalty, being that which, is equal to the royalty that [appellants] presently holds, and [Zaffirini] will receive fees only from the royalty in excess of twenty five percent (25%).*

3. If [Zaffirini] does not recover anything, [appellants] will owe [Zaffirini] no attorneys fees.

(emphasis in original)

Zaffirini claims that when appellants came to his office to sign the 2017 Agreement, it was explained to appellants that the addition of the third-party language in provision two was mistakenly left out of the earlier draft, that he included the language to accurately reflect the terms agreed to between himself and appellants, and that the change was fully explained to appellants before they signed the 2017 Agreement. Appellants represent that they signed the 2017 Agreement understanding that they could fire Zaffirini at any time.

On June 25, 2018, several appellants sent Zaffirini an email asking him to "stop all work being done regarding any and all claims/recovery against [the current producer] and its related companies" and cease all negotiations regarding a new lease. On September 12, 2018, appellants fired Zaffirini through a letter from their new counsel. When Zaffirini asked for a reason for his termination, appellants' new counsel responded "[appellants] do not need grounds to terminate you as their attorney but if you demand grounds, I believe you have conflict of interests and potentially breached your fiduciary duty[.]"

In the summer of 2021, appellants signed a new oil and gas lease that provided substantial bonuses to each appellant and Zaffirini. After appellants received their bonuses in accordance with the new lease, Zaffirini, based on the 2017 Agreement, sent each appellant an invoice for 20% of their respective bonuses. Appellants refused to pay, which resulted in Zaffirini initiating the underlying lawsuit.

On October 26, 2021, Zaffirini filed his original petition alleging, as relevant here, that appellants failed to pay him his contingency fee in accordance with the 2017 Agreement and that

appellants fired him and then accepted the same lease terms he had negotiated with a new producer prior to being terminated.

After several amended petitions, counterclaims by appellants, and counterclaims by Zaffirini, on October 20, 2022, Zaffirini filed his original motion for sanctions. Zaffirini's original motion alleged sanctions were proper because (1) appellants and their counsel had actual knowledge that their counterclaims were baseless at the time they were filed and (2) appellants fabricated a document in discovery by removing the "draft" watermark from the draft agreement sent by Zaffirini with the September 20, 2017, email to appellants when appellants produced the document in discovery. The original motion cited portions of the appellants' depositions and contended that appellants' deposition testimonies directly contradicted the allegations in their pleadings. Specifically, Zaffirini averred: that "[u]nder oath, [appellants] admitted they reaped the benefits of Mr. Zaffirini's work under the [2017 Agreement] and terminated him simply to avoid paying him;"[1] appellants understood the terms of the 2017 Agreement when they signed the agreement; appellants signed the 2017 Agreement with the intention of not honoring the agreement; and that appellants knowingly altered a discovery document by removing the "draft" watermark from the draft agreement before producing the document in discovery. The original motion requested the trial court strike appellants' counterclaims "to the extent these claims rely on allegations regarding damages, duty, and/or breach that are inconsistent with [appellants'] sworn deposition testimony." Zaffirini additionally requested the trial court order monetary and death penalty sanctions against appellants and their attorneys. The legal basis for the original motion rested upon Texas Rules of Civil Procedure 13 and 215, Chapter 10 of the Texas Civil Practices & Remedies Code, and the trial court's inherent powers. *See* TEX. R. CIV. P. 13, 215; TEX. CIV.

---

[1] The original motion asserted appellants performed additional sanctionable conduct not at issue in this appeal.

PRAC. & REM. CODE § 10.001, *et seq.*; *In re Estate of Perez-Muzza,* 446 S.W.3d 415, 424 (Tex. App.—San Antonio 2014, pet. denied).

Several motions for summary judgment were filed by both parties in which the issue of appellants' deposition testimonies in connection with their counterclaims was hotly disputed. On October 26, 2022, appellants filed a response to Zaffirini's original motion for sanctions. Among other things, appellants stated:

> Zaffirini complains that [appellants] asserted counterclaims that are contrary to their sworn testimony. Specifically, Zaffirini claims that each [appellant] testified that they terminated him because they did not want to pay him pursuant to the 2017 [Agreement], that the release [appellants] signed in 2020 was identical to the release Zaffirini obtained for himself in December of 2018, that after signing the release, each [appellant] received benefits under a lease with [the new producer], that [appellants] had no evidence to support their claim for damages, . . . and that [appellants] falsely claim that they fired Zaffirini because they did not want to pay him.[2]

Several more rounds of summary judgment motions and responses were filed by the parties; again, many of the factual allegations centered around appellants' deposition testimonies. Finally, on January 16, 2024, the trial court granted Zaffirini's no-evidence motion for summary judgment, dismissing appellants' counterclaims.

On February 9, 2024, Zaffirini filed an amended motion for sanctions. Like his original motion filed on October 20, 2022, Zaffirini's amended motion alleged (1) appellants knew their counterclaims were baseless, frivolous, and groundless when filed and (2) that appellants had intentionally removed the "draft" watermark from the draft agreement sent with the September 20, 2017, email to appellants when the document was produced to Zaffirini in discovery. Zaffirini's amended motion likewise sought monetary and death penalty sanctions against appellants and their

---

[2] Zaffirini filed a reply in support of his original motion in which he contended that appellants' "assertion they were 'tricked' into signing the 2017 [] Agreement is a recent creation, born of this litigation."

attorneys under Texas Rules of Civil Procedure 13 and 215, Chapter 10 of the Texas Civil Practices & Remedies Code, and the trial court's inherent powers.

On March 22, 2024, appellants moved to dismiss Zaffirini's amended motion for sanctions under the TCPA. In addition to complaining about the trial court's recent summary judgment rulings in Zaffirini's favor that dismissed appellants' counterclaims, appellants asserted they were entitled to a dismissal under the TCPA because Zaffirini's amended motion was based on appellants' "exercise of their right to petition . . . because the basis for the relief Zaffirini requests is the statements made by [appellants] in their depositions and in their responses to his numerous motions for summary judgment." Assuming without conceding that Zaffirini could carry his burden under the TCPA, appellants nevertheless claimed they should prevail because the trial court:

> erred when it granted summary judgment [on appellants'] counterclaims and affirmative defenses, because [appellants] submitted sufficient evidence to create a fact issue on these defenses and claims. Because Zaffirini's [amended motion for sanctions] is based upon the [trial court's] rulings on his summary judgment motions, the fact that the [trial court] erred in granting them in the first place is a complete defense to Zaffirini's Amended Motion for Sanctions.

Addressing the timeliness of their motion, appellants asserted their TCPA motion to dismiss was timely because it was filed within sixty days of Zaffirini filing his amended motion for sanctions and because the amended motion "relies upon new legal theories and a completely different set of facts to support his requested relief."

On May 10, 2024, the trial court signed an order denying Zaffirini's amended motion for sanctions. The same day, the trial court denied appellants' TCPA motion to dismiss. Appellants appeal the denial of their TCPA motion.

**THE TEXAS CITIZENS PARTICIPATION ACT**

*Applicable Law and Standard of Review*

The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. Under the TCPA, a party may file a motion to dismiss a legal action if the "legal action is based on or is in response to [that] party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a).

The filing of a TCPA motion triggers a three-step resolution process with shifting burdens. First, the movant must demonstrate that the TCPA applies. *See id.* § 27.005(b). To meet this burden, the movant must demonstrate that the nonmovant's legal action is based on or is in response to the movant's exercise of a right to associate, speak freely, or petition. *Id.* If the movant meets its initial burden, the burden then shifts to the party bringing the legal action—the nonmovant—to establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* § 27.005(c). If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish any valid affirmative defense as a matter of law. *Id.* § 27.005(d). In making a TCPA determination, the trial court considers the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Id.* § 27.006(a); TEX. R. CIV. P. 166a (stating evidence trial court may consider in summary judgment proceeding). We review *de novo* whether the parties have met their respective TCPA burdens. *See Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

In our review under the proper standard, we are mindful that "a TCPA motion to dismiss is not a trial on the merits and is not intended to replace either a trial or the summary judgment proceeding established by the Texas Rules of Civil Procedure." *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 215 (Tex. App.—Eastland 2019, pet. denied); *see also West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019) ("A finding that [nonmovant] has met his TCPA burden does not establish that his allegations are true."). Therefore, we do not resolve any disputed facts in the underlying proceeding.

*TCPA's Applicability in this Case*

First, as the movants, appellants must establish the TCPA applies to the action at issue—Zaffirini's amended motion for sanctions. Appellants argue Zaffirini's amended motion is a "legal action" squarely within the TCPA and cite several of our opinions in support of their argument. *See Doe v. Cruz*, 683 S.W.3d 475, 488 (Tex. App.—San Antonio 2023, no pet.); *KB Home Lone Star Inc. v. Gordon*, 629 S.W.3d 649, 656 (Tex. App.—San Antonio 2021, no pet.); *NEC Networks, LLC v. Gilmartin*, No. 04-23-00109-CV, 2023 WL 8246671, at *5–7 (Tex. App.—San Antonio Nov. 29, 2023, pet. denied) (mem. op.); *Whataburger Restaurants LLC v. Ferchichi*, No. 04-22-00020-CV, 2022 WL 17971316, at *2–3 (Tex. App.—San Antonio Dec. 28, 2022, pet. granted) (mem. op.). Zaffirini, on the other hand, claims his amended motion for sanctions is not a "legal action" under the TCPA because his motion "does not assert an existing right nor is it a right to receive payment or an equitable remedy, it does not amend or add a claim under the TCPA." *See Thuesen v. Scott*, 667 S.W.3d 467, 476 (Tex. App.—Beaumont 2023, no pet.) (concluding a motion for sanctions did not come within the purview of the statute's use of "legal action," but acknowledged sister courts have reached different results).

The TCPA's applicability to Zaffirini's amended motion for sanctions is not an issue we must decide today because, assuming without deciding the TCPA is applicable, we ultimately hold appellants' TCPA motion to dismiss was untimely.[3] *See Patriot Contracting, LLC v. Mid-Main Properties, LP*, 650 S.W.3d 819, 824 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) ("If we agree the motion was untimely, we need not consider appellants' other arguments because a trial court does not err in denying an untimely filed TCPA motion, even a meritorious one.").

*Timeliness of Appellants' TCPA Motion to Dismiss*

The TCPA may be used as a vehicle to expedite the dismissal of retaliatory lawsuits by enforcing a series of "fairly tight" deadlines. *Grubbs v. ATW Invs., Inc.*, 544 S.W.3d 421, 422 (Tex. App.—San Antonio 2017, no pet.). Specifically, a motion to dismiss "must be filed not later than the 60th day after the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE § 27.003(b). In this case, the dispositive issue is whether Zaffirini's original motion for sanctions triggered the sixty-day deadline for appellants to file their TCPA motion to dismiss.

Although Zaffirini's subsequent motion was an "amended" motion instead of a "new" or "first" motion, a motion's substance—rather than its title—controls whether the sixty-day deadline begins. *See Patriot Contracting*, 650 S.W.3d at 827 ("[T]he filing of an amended pleading that does not alter the 'essential nature' of an action does not restart the deadline."). Thus, we must determine whether the substance of Zaffirini's amended motion for sanctions asserted "the same legal claims or theories by and against the same parties and based on the same essential facts." *Montelongo v. Abrea*, 622 S.W.3d 290, 293 (Tex. 2021) ("[A]n amended or supplemental pleading

---

[3] Appellants, in addition to addressing the TCPA's applicability and the timeliness of their motion to dismiss, raise issues relating to the denial of their motion on the basis that the trial court erred: (1) to the extent it determined that the "commercial speech exemption" applied to Zaffirini's amended motion; and (2) to the extent it determined appellants had failed to meet their burden under the TCPA and that Zaffirini had satisfied his burden. Because we conclude appellants' TCPA motion to dismiss was untimely, we do not address appellants' remaining issues as it us unnecessary for us to do so. *See* TEX. R. APP. P. 47.1.

that asserts the same legal claims or theories by and against the same parties and based on the same essential facts alleged in a prior pleading asserts the same 'legal action' to which the sixty-day period previously applied and thus does not trigger a new sixty-day period for filing a dismissal motion."). If the answer to this inquiry is "yes" then we need not reach any of appellants remaining arguments as their TCPA motion was untimely. *See id*.; *Patriot Contracting*, 650 S.W.3d at 824. On the other hand, if the answer is in the negative, appellants' TCPA motion was timely as to the new facts or claims alleged in the amended motion as the sixty-day clock restarted. *Montelongo*, 622 S.W.3d at 293–94; *Patriot Contracting*, 650 S.W.3d at 830 (holding new pleading did not add new claims nor essential factual allegations; thus, TCPA motion was untimely); *Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353, at *8 (Tex. App.—Dallas Feb. 11, 2022, pet. denied) (mem. op.) (holding TCPA motion untimely where the allegation was "in the original petition . . . and in every amendment to the petition that is in the record on appeal" and a subvariant wording the original petition was "essentially the same claim re-alleged repeatedly over two years in the subsequent amendments to the petition.").

Appellants argue their TCPA motion was timely because Zaffirini's amended motion for sanctions "was based upon new factual allegations that were not present in his original motion." Zaffirini contends just the opposite: that his amended motion did not restart the TCPA deadline because it merely reasserted the same facts and sought the same relief as his original motion for sanctions.

Zaffirini's original motion filed on February 9, 2022, moved for sanctions under Texas Rules of Civil Procedure 13 and 215, Chapter 10 of the Texas Civil Practices & Remedies Code, and the trial court's inherent authority based on appellants' (1) alleged false deposition testimonies that conflicted with their pled counterclaims and (2) alleged intentional production of the draft

agreement without the "draft" watermark. In his original motion, Zaffirini quoted specific portions of appellants' deposition testimonies, which he argues showed appellants understood the 2017 Agreement and executed the 2017 Agreement with the intention of firing Zaffirini without cause and without compensating him. Zaffirini additionally asserted several allegations regarding the draft agreement produced in discovery by appellants, namely, that appellants and their attorneys had removed the "draft" watermark from the document with fraudulent intent.

Like his original motion, Zaffirini's amended motion moved for sanctions under Texas Rules of Civil Procedure 13 and 215, Chapter 10 of the Texas Civil Practices & Remedies Code, and the trial court's inherent authority on the basis that appellants allegedly knew their counterclaims were baseless, groundless, and frivolous when filed. Zaffirini additionally reasserted his claim for sanctions against appellants and their attorneys regarding the draft agreement produced in discovery without the "draft" watermark. Zaffirini's amended motion was more descriptive than his original motion. For example—in connection with Zaffirini's assertion that appellants knew the nature of the contingency agreement and that they intended to fire him when they signed the 2017 Agreement—Zaffirini's amended motion included: a single supporting citation to appellants' response to Zaffirini's amended motion for traditional summary judgment; and three references to the various orders on motions for summary judgment made throughout the case. These references in Zaffirini's amended motion, which were not in his original motion, raise the question of whether Zaffirini's original motion contained enough specificity so appellants could "ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant" in seeking dismissal under the TCPA. *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 849 (Tex. 2021) (citations omitted) (internal quotation marks omitted).

In resolving this question, we are guided by *Kinder Morgan SACROC, LP v. Scurry Cnty*. *See id*. *Kinder Morgan* involved a dispute between a taxing authority against a taxpayer regarding the tax value of mineral interests. *Id.* at 839. In its original petition for judicial review, the taxing authority alleged, without any factual allegations, that the taxpayer's mineral interests were "erroneously and incorrectly omitted from appraisal" but did not accuse the taxpayer of any wrongdoing. *Id.* The taxing authority subsequently filed a second amended petition for review in which it alleged for the first time that the taxpayer "knowingly and purposefully provided inaccurate and/or incomplete information to be relied upon by [the county's appraiser] in an effort to evade payment of taxes[.]" *Id.* at 840. The taxpayer filed a TCPA motion to dismiss, which the trial court denied as untimely. The taxpayer's TCPA motion to dismiss was filed one hundred and ten days after the filing of the original petition and thirty-four days after the filing of the second amended petition. *Id.* at 841. The Court reversed, holding, in accordance with *Montelongo*, that the second amended petition's assertion of new factual allegations (i.e., that the taxpayer knowingly and purposefully provided inaccurate and/or incomplete information rather than the mineral interests were merely erroneously and incorrectly omitted from appraisal) restarted the sixty-day TCPA deadline to file a motion to dismiss. *Id.*; *see also Montelongo*, 622 S.W.3d at 298–301.

Following the legal principles of *Kinder Morgan*, we hold appellants' TCPA motion to dismiss was untimely. Unlike *Kinder Morgan*, here, Zaffirini's original motion and amended motion carried the same sanctionable accusations against appellants and their attorneys, moved for sanctions on the same legal bases, and sought the ultimate relief.[4] The inquiry is not whether the

---

[4] As referenced above, we acknowledge that the substance of appellants' deposition testimonies was vigorously disputed throughout Zaffirini's many motions for summary judgment, which were filed prior to Zaffirini filing his amended motion for sanctions.

two motions are identical; rather, the question is whether the original motion sufficiently pled fair notice of the claims involved so that appellants could ascertain the nature and basic issues of the controversy and relevant testimony. *Kinder Morgan.*, 622 S.W.3d at 849. Here, the answer to our inquiry is yes, Zaffirini's original motion provided fair notice to appellants. Although the amended motion contains references to the recent summary judgment rulings, the essential nature of the basis on which Zaffirini moved for sanctions remained unchanged between the two motions. *See id.*; *Patriot Contracting*, 650 S.W.3d at 827. Accordingly, appellants' TCPA motion to dismiss was untimely as it was not filed within 60 days of Zaffirini's original motion for sanctions.

Finally, on appeal, Zaffirini requests we award him fees in connection with the denial of appellants' TCPA motion, but Zaffirini did not file a cross-appeal or provide another basis to recover fees. *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment . . . must file a notice of appeal."); *Wendt v. Weinman & Associates, P.C.*, 595 S.W.3d 926, 930 (Tex. App.—Austin 2020, no pet.). Accordingly, we deny Zaffirini's request for an award of attorney's fees in connection with his defense of appellants' TCPA motion to dismiss.

## CONCLUSION

We affirm the trial court's order denying appellants' TCPA motion to dismiss.

Lori I. Valenzuela, Justice